## PEOPLE v JOHNSON

Docket No. 75775. Argued April 10, 1986 (Calendar No. 4). Decided
    December 26, 1986. Rehearing denied 428 Mich 1206.

Henry Johnson was convicted by a jury in the Ionia Circuit
    Court, Charles W. Simon, Jr., J., of second-degree murder. The
    complaint and information charging the defendant had stated
    an open charge of murder, but cited the first-degree murder
    statute, and the defendant had been bound over without specifi-
    cation of degree following preliminary examination. At trial,
    the jury was instructed as to first-degree premeditated murder,
    second-degree murder, voluntary manslaughter, assault with
    intent to do great bodily harm less than murder, and felonious
    assault. The Court of Appeals, R. B. BURNS, P.J., and ALLEN
    and BROWN, JJ., affirmed in an unpublished opinion per curiam
    (Docket No. 76167). The defendant appeals.

In opinions by Justice BOYLE, joined by Justices BRICKLEY and
    RILEY, and by Chief Justice WILLIAMS, the Supreme Court held:

Sufficient evidence was presented at the preliminary exami-
    nation from which the magistrate could have inferred premedi-
    tation and deliberation.

Justice BOYLE, joined by Justices BRICKLEY and RILEY, stated
    that no specification of the degree of murder or proof of
    premeditation and deliberation is required at a preliminary
    examination in order to bind over a defendant on a charge of
    open murder.

1. There is no federal constitutional right to a preliminary
    examination or hearing in a criminal prosecution. The proce-
    dure is left to the states. In Michigan, the right is statutory.
    The primary function of the preliminary examination is to
    determine whether a crime has been committed and, if so,
    whether there is probable cause to believe that the defendant
    committed it, so as to enable a magistrate to bind over the
    defendant for trial. A preliminary examination, unless waived,
    is a condition precedent to the filing of an information by the
    prosecutor, providing the parameters of the information.

2. The open murder statute recognizes that murder is a
    single offense and that at the informational stage of proceed-
    ings only a charge that the defendant murdered the deceased

need be set forth. Neither the open murder statute nor case law requires specification of the degree of murder at a preliminary examination where open murder is charged in the information. Where a person is indicted with murder of an unspecified degree and is ultimately found guilty of murder, the jury must also determine the degree. It follows that at the preliminary examination, which occurs at an earlier stage, no specification of degree of murder or a finding of premeditation and deliberation is required. Procedurally, the meaning of the open murder charge is that no evidence of premeditation and deliberation need be adduced at the preliminary examination. Following the filing of an information or an indictment based upon general pleading, specific information concerning the factual basis of the offense may be obtained upon a request by the defendant to the prosecutor to furnish a bill of particulars, assuring the defendant adequate notice in advance of trial of the factual basis underlying the alleged offense.

3. Even if factors which separate first-degree from second-degree murder are elements of the crime, disparate treatment of persons suspected of murder at preliminary examinations need be justified only by the showing of a rational basis for the disparate treatment, not a compelling state interest. Generally, before any disparate treatment will be subjected to heightened judicial scrutiny, the burdening of a fundamental constitutional interest or the utilization of a suspect classification, i.e., race, national origin, alienage, illegitimacy, or gender must be shown. Absent such burdening or classification, the law will be upheld if there is some rational relation of the classification to a valid governmental end. Murder suspects have not been recognized as a "suspect classification," requiring heightened judicial scrutiny for equal protection purposes. Nor is there a fundamental constitutional interest in being charged with a specific degree of murder. Since plausible rational bases for the open murder charge can be imagined, any disparate treatment of persons charged under the open murder statute does not violate either the federal or state Equal Protection Clause.

4. Use of murder charges of unspecified degree has been recognized by the judiciary of Michigan for over a century. It is inappropriate to alter the legislative scheme by invalidating the open murder statute on the basis of the Court's inherent power to create rules of criminal procedure merely because of dissatisfaction with the absence of a standard to determine whether a prosecutor's discretion to specify the degree of murder has been reasonably exercised. Whatever the scope of the Court's inherent power, properly exercised legislative power

such as that in this case is entitled to a degree of deference. Where the Legislature has enacted a constitutionally valid statute within its authority, the Court should not overrule it simply as a matter of its own preference.

5. In this case, evidence was presented at the preliminary examination from which the magistrate could have inferred premeditation and deliberation. The trial court had subject matter jurisdiction to adjudicate first- and second-degree murder cases by virtue of the power conferred by the constitution and statutes. It had personal jurisdiction over the defendant upon the filing of the return by the magistrate. Following the filing of the return, the prosecutor had authority to file the information. Because there was sufficient evidence at trial to allow the jury to consider the issue of premeditation and deliberation, any error at the preliminary examination must be considered harmless in view of the lack of any actual prejudice to the defendant's right to a fair trial. Open murder includes both first- and second-degree murder. The circuit court had jurisdiction of the defendant as to both. Jurisdiction having been conferred, it would be inappropriate to wrest it from the circuit court by judicial fiat.

Chief Justice WILLIAMS, concurring, stated that while the Supreme Court may disagree with the findings of a magistrate at a preliminary examination, it may not substitute its judgment for that of the magistrate absent a clear abuse of discretion. In this case, sufficient evidence was presented to justify the magistrate's decision to allow the case to proceed to trial on a charge of first-degree murder.

Affirmed.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that while an information charging open murder is not defective per se, it is a separate question whether a person who has demanded a preliminary examination and is bound over on a charge of open murder can be tried and convicted of first-degree murder unless sufficient evidence was offered at the preliminary examination to justify a finding of probable cause that the offense of first-degree murder was committed and the magistrate bound the person over on such a finding. At a preliminary examination, evidence must be established of each element of the crime charged or evidence from which those elements may be inferred. Premeditation and deliberation are clearly elements of first-degree murder. Thus, where preliminary examination has been demanded, a person bound over on a charge of open murder may be tried and convicted of first-degree murder only where sufficient evidence is produced to

establish probable cause to believe that the offense of first-degree murder has been committed and the magistrate so determined.

Justice ARCHER stated that the examining magistrate clearly abused his discretion in binding the defendant over for trial to the circuit court on a charge of open murder on the basis of a finding of premeditation and deliberation. While a defendant may be charged in a complaint and warrant with open murder, a specific degree of murder must be charged after proofs are presented at preliminary examination. Where preliminary examination is waived, a prosecutor, upon timely request by a defendant, must determine and advise the defendant of the specific degree of murder to be charged.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gary M. Gabry,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

*Lawrence P. McKaig* for the defendant.

BOYLE, J. Henry Johnson was bound over on an open charge of murder and later convicted by a jury of second-degree murder. On appeal before this Court, Mr. Johnson claims that the open murder charge violates constitutional guarantees of equal protection and due process. He also claims that evidence of premeditation and deliberation was both required and insufficient at the preliminary examination. Finally, Mr. Johnson argues that the trial court deprived him of the right to establish the defense of self-defense by disallowing his testimony concerning his fear and apprehension at the time of a fight.

We would hold that no constitutional violation occurred as a result of the open charge of murder used in this case. We would further hold that proof of premeditation and deliberation need not be shown at a preliminary examination where a defendant is bound over on a charge of open murder. Given the clear statutory framework

which establishes the open charge of murder, it would be inappropriate for this Court to impose by judicial decision a contrary requirement solely based upon our inherent power. Neither the federal nor the state constitution nor the statutes enacted by the Legislature require proof of premeditation and deliberation before bindover on an open charge of murder. Finally, we concur in Justice ARCHER's disposition of defendant's claim that his right to a fair trial was violated by the trial court's failure to allow Mr. Johnson to freely describe his feelings and perceptions at the time of the fight. Therefore, we would affirm the decision of the Court of Appeals.

I

FACTS

Defendant was bound over on an open charge of murder and convicted by jury of second-degree murder. The events leading up to this case are set forth in the unpublished opinion of the Court of Appeals:

In the early hours of July 9, 1983, defendant, and his friend Michael Crater, drove to the apartment of Barbara Reed in Ionia, Michigan. Upon arrival, they found a party going with some 12 people in attendance and in various stages of intoxication. . . . Not long after arrival, defendant and Barbara left the living room and went through the kitchen to the bathroom where they found the eventual victim, Roy Tower, standing talking to Rick Urbina, one of the guests. Tower, 21 years of age, was manager of the apartment house.

Conflicting versions of just what went on in the

bathroom upon defendant's entry were given but all parties agreed a fight ensued. Defendant testified that Tower drew a hunting knife from his side and while holding it at shoulder height advanced toward defendant. Barbara Reed corroborated defendant's version that Tower had a knife in his hands. Rick Urbana testified that upon entering the bathroom defendant pulled and opened his knife, told Tower, "come on, mother fucker" and stabbed Tower and that Tower had stepped away from defendant prior to the first stabbing. Urbana further testified that defendant advanced on Tower a second time stabbing him in the chest as decedent backed up toward the bathroom. Both witnesses agreed it all occurred within five or ten seconds or within "seconds, seconds fast." Dr. Simson, a pathologist, testified that decedent died as a result of a stab wound to the heart.

The jury found Mr. Johnson guilty of second-degree murder, and the Court of Appeals affirmed the conviction.

II

THE STATUTORY FRAMEWORK

There is no federal constitutional right[1] to a preliminary examination or hearing—the procedure is one left to the Legislature to provide or not. *Gerstein v Pugh,* 420 US 103; 95 S Ct 854; 43 L Ed 2d 54 (1975). In Michigan, the preliminary examination is solely a creation of the Legislature —it is a statutory right. See, generally, MCL 766.1-766.22; MSA 28.919-28.940.

[1] Even a violation of a federal constitutional right does not necessarily require reversal. See *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967); *Delaware v Van Arsdall,* 475 US 673; 106 S Ct 1431, 1438; 89 L Ed 2d 674 (1986); *People v Whitfield,* 425 Mich 116; 388 NW2d 206 (1986).

MCL 766.1; MSA 28.919[2] provides that the state
and the accused are entitled to a prompt prelimi-
nary examination. MCL 766.4; MSA 28.922[3] pro-
vides that the preliminary examination must be
set within twelve days of the arraignment on the
warrant. The preliminary examination's primary
function is "to determine if a crime has been
committed and, if so, if there is probable cause to
believe the defendant committed it." *People v
Duncan*, 388 Mich 489, 499; 201 NW2d 629 (1972);
MCL 766.5; MSA 28.923.[4] While the preliminary
examination may contribute to satisfying the
Const 1963, art 1, § 20, requirement that the de-
fendant "be informed of the nature of the accusa-
tion," it primarily serves the public policy of ceas-
ing judicial proceedings where there is a lack of

---

[2] MCL 766.1; MSA 28.919 provides:

The state and accused shall be entitled to a prompt examina-
tion and determination by the examining magistrate in all
criminal causes and it is hereby made the duty of all courts
and public officers having duties to perform in connection with
such examination, to bring them to a final determination
without delay except as it may be necessary to secure to the
accused a fair and impartial examination.

[3] MCL 766.4; MSA 28.922 provides:

The magistrate before whom any person is brought on a
charge of having committed a felony shall set a day for a
preliminary examination not exceeding 12 days thereafter, at
which time a magistrate shall examine the complainant and
the witnesses in support of the prosecution, on oath in the
presence of the accused, in regard to the offense charged and in
regard to any other matters connected with the charge which
the magistrate considers pertinent.

[4] MCL 766.5; MSA 28.923 provides:

If it appears that a felony has been committed and that there
is probable cause to believe that the accused is guilty thereof,
and if the offense is bailable by the magistrate and the accused
offers sufficient bail, it shall be taken and the prisoner dis-
charged until trial.

evidence that a crime was committed or that the defendant committed it. At the preliminary examination, the prosecution has the burden of proving that a crime occurred and that there is probable cause that defendant committed it.[5] Absent such a showing, there cannot be a proper bindover by the magistrate. *People v Charles D Walker,* 385 Mich 565, 573; 189 NW2d 234 (1971); MCL 766.13; MSA 28.931.[6]

A proper bindover, or waiver, is necessary to provide authority for the prosecutor to file an information against the defendant in circuit court. MCL 767.42; MSA 28.982 provides that a preliminary examination, unless waived, is a "condition precedent" to the filing of an information by the prosecutor. MCL 767.42(1); MSA 28.982(1) provides:

An information shall not be filed against any person for a felony until such person has had a preliminary examination therefor, as provided by law, before an examining magistrate, unless that person waives his statutory right to an examination. If any person waives his statutory right to a

---

[5] There is some question concerning whether the standard of cause to believe a crime was committed is the same as the standard of cause to believe that it was the defendant who committed it. See Note, proposed MCR 6.107(E), 422A Mich 32-33. Proposed MCR 6.107(E) resolves the question by requiring the same probable cause standard for the offense as for the defendant's connection with the offense. 422A Mich 27-28.

[6] MCL 766.13; MSA 28.931 provides:

If it shall appear to the magistrate at the conclusion of the preliminary examination either that an offense has not been committed or that there is not probable cause for charging the defendant therewith, he shall discharge such defendant. If it shall appear to the magistrate at the conclusion of the preliminary examination that a felony has been committed and there is probable cause for charging the defendant therewith, the magistrate shall forthwith bind the defendant to appear before the circuit court of such county, or other court having jurisdiction of the cause, for trial.

preliminary examination without having had the benefit of counsel at the time and place of the waiver, upon proper and timely application by the person or his counsel, before trial or plea of guilty, the court having jurisdiction of the cause, in its discretion, may remand the case to a magistrate for a preliminary examination.

This statute is a limitation on the prosecution, not on the general jurisdiction of the circuit court.[7] In *People v Dochstader*, 274 Mich 238, 244; 264 NW 356 (1936), we said:

The finding by the examining magistrate that a crime had been committed and there was probable cause to believe defendant guilty thereof was a necessary prerequisite to the filing of an information. This binding conclusion and finding of the

---

[7] The circuit court is a "court of general jurisdiction," MCL 600.151; MSA 27A.151, having "original jurisdiction in all matters not prohibited by law . . . ." Const 1963, art 6, § 13. See MCL 600.601; MSA 27A.601.

" 'Jurisdiction' is 'the power [of a court] to act.' " *State Hwy Comm'r v Gulf Oil*, 377 Mich 309, 312; 140 NW2d 500 (1966); *Kent Prosecutor v Kent Circuit Judges*, 110 Mich App 404, 407; 313 NW2d 135 (1981). Subject matter jurisdiction " 'is the right of [a] court to exercise judicial power over a *class* of cases; not the particular *case* before it, but rather the abstract power to try a case of the *kind* or *character* of the one pending . . . .' " (Emphasis supplied.) *Joy v Two-Bit Corp*, 287 Mich 244, 253; 283 NW 45 (1938); *Adams v Adams*, 100 Mich App 1, 16; 298 NW2d 871 (1980), lv den 409 Mich 935 (1980). "The jurisdiction of the [circuit] court over the *subject matter* [(breaking and entering)] [was] not . . . questioned" in *People v Phillips*, 383 Mich 464, 469; 175 NW2d 740 (1970). (Emphasis supplied.) There the Supreme Court was "concerned only with the validity of the procedure whereby [the circuit] court sought to exercise its jurisdiction over the *person* of the accused." *Id.* (Emphasis supplied.)

Jurisdiction of a criminal defendant is acquired by the circuit court "upon the filing . . . of the return of the magistrate before whom [the defendant] had waived preliminary examination," *In re Elliott*, 315 Mich 662, 675; 24 NW2d 528 (1946), or "before whom the defendant had been examined," *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 119; 215 NW2d 145 (1974). See also *People v Curtis*, 389 Mich 698, 707; 209 NW2d 243 (1973); *People v Farmilo*, 137 Mich App 378, 380; 358 NW2d 350 (1984); MCL 766.14; MSA 28.933. "The circuit court does not lose jurisdiction, where a void or improper information is filed." *In re Elliott, supra*, 675.

examining magistrate is a judicial determination, and constitutes the basis of the right of the prosecuting attorney to proceed in the circuit court by filing an information against defendant. Without such finding and determination by the examining magistrate, the prosecuting attorney is without jurisdiction to proceed in the circuit court by filing an information against defendant. *People v Evans,* 72 Mich 367 [40 NW 473 (1888)].

Neither statute nor case law requires specification of the degree of murder at a preliminary examination where open murder is charged in the information. Indeed, at common law, there was no specification of degree of murder because all unexcused and unjustified homicides committed with malice were murder punished by death. Perkins, Criminal Law (2d ed), p 88. Specification of degree is a legislative innovation used to distinguish between those murders meriting the harshest punishment and those murders meriting a less severe punishment. *Id.,* pp 88-89. MCL 767.44; MSA 28.984[8] simply validates simplified short-form informations for the charging of various crimes.[9] The

---

[8] The pertinent portions of MCL 767.44; MSA 28.984 provide:

The following forms may be used in the cases in which they are applicable but any other forms authorized by this or any other law of this state may also be used:

* * *

Murder—A.B. murdered C.D.

[9] MCL 767.44; MSA 28.984 also provides a means for obtaining specific information concerning the factual basis of the offense: "[T]he prosecuting attorney, if reasonably requested by the respondent, *shall* furnish a bill of particulars setting up specifically the nature of the offense charged." (Emphasis added.) When a statutory short-form information is used, the defendant has a statutory right to a bill of particulars, while, when the common-law long-form information is used, the trial court may in its discretion order a bill of particulars. *People v Tenerowicz,* 266 Mich 276, 287-288; 253 NW 296 (1934). Once a bill of particulars is supplied, a defendant has a right "to have the trial confined to the particulars set up therein." *People v Ept,* 299 Mich 324, 326; 300 NW 105 (1941).

"open murder" statute, MCL 767.71; MSA 28.1011,[10] recognizes that murder is a single offense and that, at the *informational* stage, no specification of degree is required. The information occurs after and depends upon the bindover for the possible charges. MCL 767.45; MSA 28.985 requires that an information contain merely "[t]he nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged . . . ." MCL 767.71; MSA 28.1011 provides that an indictment or information charging murder need only set forth the "charge that the defendant did murder the deceased . . . ."

The meaning of the "open murder" charge in Michigan statutory criminal procedure is that no evidence of premeditation and deliberation need be adduced at the preliminary examination. The preliminary examination provides the parameters of the information which may be filed by the prosecution. Since MCL 767.71; MSA 28.1011 does not require specification of first- or second-degree murder in the information, it is a reasonable assumption that the Legislature had no intention of requiring proof of premeditation and deliberation at the earlier stage of the preliminary examination. No statute makes such a requirement. The nature of the process is from general to specific, not from specific to general. A requirement of specification of degree at the preliminary examination stage would make the provisions of MCL 767.71; MSA

---

[10] MCL 767.71; MSA 28.1011 provides:

In all indictments for murder and manslaughter it shall not be necessary to set forth the manner in which nor the means by which the death of the deceased was caused; but it shall be sufficient in any indictment for murder to charge that the defendant did murder the deceased; and it shall be sufficient in manslaughter to charge that the defendant did kill the deceased.

28.1011 for an open murder charge at the information stage totally meaningless.

MCL 750.318; MSA 28.550 supports this conclusion. The statute provides that where a person is indicted (or informed against) with murder of an unspecified degree, the jury, upon finding defendant guilty of murder, must also determine the degree:

> The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree; but, if such person shall be convicted by confession, the court shall proceed by examination of witnesses to determine the degree of the crime, and shall render judgment accordingly.

A requirement that the degree be specified at the preliminary examination would render this statute, along with MCL 767.71; MSA 28.1011, nugatory. See *People v Doe,* 1 Mich 451, 457-458 (1850). The legislative scheme contemplates that the circuit court has the power to adjudicate both first- and second-degree charges on a bindover on open murder.

The statutory scheme in question addresses concerns of unfair surprise, inadequate notice, and insufficient opportunity to defend, all relevant to a defendant's right to a fair opportunity to meet the charges against him. Thus, while allowing information or indictment based upon general pleading, MCL 767.44; MSA 28.984 also provides a means for obtaining specific information concerning the factual basis of the offense: "[T]he prosecuting attorney, if seasonably requested by the respondent, *shall* furnish a bill of particulars setting up specifically the nature of the offense charged." (Emphasis added.) When a statutory short-form

information is used, the defendant has a statutory right to a bill of particulars, while when the common law long-form of information is used, the trial court may in its discretion order a bill of particulars. *People v Tenerowicz,* 266 Mich 276, 287-288; 253 NW 296 (1934). Once a bill of particulars is supplied, a defendant has a right "to have the trial confined to the particulars set up therein." *People v Ept,* 299 Mich 324, 326; 300 NW 105 (1941). Thus, the procedural implementation of MCL 767.44; MSA 28.984 assures that the defendant will have notice in advance of trial of the factual basis underlying the alleged offense.[11]

The trial court had subject matter jurisdiction to adjudicate first- and second-degree murder cases by virtue of the power conferred by the constitution and statutes. It had personal jurisdiction over Mr. Johnson upon the filing of the return by the magistrate as provided by statute. Following the filing of the return, the prosecutor had authority to file an information.

### III

### EQUAL PROTECTION

Federal and state Equal Protection Clauses are not violated by the alleged disparate treatment of murder suspects at preliminary examinations. *Post,* pp 134-138. Even if those factors which separate first-degree murder from second-degree. murder are "elements" of the crime, disparate treatment of those suspected of murder need only be justified by a rational basis:

[The Equal Protection Clause] does not reject the

---

[11] The "open discovery" rules set out in the Proposed Rules of Criminal Procedure would also provide a defendant with pretrial information concerning the factual basis underlying the charge. See proposed MCR 6.201-6.204, 422A Mich 68-79.

government's ability to classify persons or "draw lines" in the creation and application of laws, but it does guarantee that those classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of individuals. If the government classification relates to a proper governmental purpose, then the classification will be upheld. [Nowak, Rotunda & Young, Constitutional Law (3d ed), § 14.2, p 525.]

Under the federal constitution, due process does not require an indictment which specifies the degree of murder. *Bergemann v Backer,* 157 US 655, 657; 15 S Ct 727; 39 L Ed 845 (1895). No fundamental constitutional interest in such an indictment has been recognized by federal courts. The fundamental constitutional interests generally protected by the Equal Protection Clause include the following: the right to vote, *Reynolds v Sims,* 377 US 533; 84 S Ct 1362; 12 L Ed 2d 506 (1964); the value of one's vote, *Baker v Carr,* 369 US 186; 82 S Ct 691; 7 L Ed 2d 663 (1962); the right to travel, *Shapiro v Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1969); and the right of privacy, *Griswold v Connecticut,* 381 US 479; 85 S Ct 1678; 14 L Ed 2d 510 (1965). Those classifications which trigger heightened judicial scrutiny include those based upon: race or national origin, *Brown v Topeka Bd of Ed,* 347 US 483; 74 S Ct 686; 98 L Ed 873 (1954); alienage, *Graham v Richardson,* 403 US 365; 91 S Ct 1848; 29 L Ed 2d 534 (1971); illegitimacy, *Levy v Louisiana,* 391 US 68; 88 S Ct 1509; 20 L Ed 2d 436 (1968); and gender, *Reed v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971).

While the defendant in the instant case was indeed suspected of murder, murder suspects have not yet been treated as a "suspect classification" requiring heightened judicial scrutiny for equal

protection purposes. Nor is there a fundamental constitutional interest in being charged with degree-specific murder. Since several rational bases for the open murder charge can be imagined,[12] any disparate treatment of those charged with murder of unspecified degree by virtue of the open murder charge violates neither the federal nor the state Equal Protection Clause.[13]

IV

INHERENT POWER

The judiciary of this state has recognized the use of murder charges of unspecified degree for over a century. *Cargen v People,* 39 Mich 549 (1878) (information charging murder without specification of degree sufficient); *People v McArron,* 121 Mich 1; 79 NW 944 (1899) (information charging that defendant did "kill and murder" deceased was sufficient); *People v Treichel,* 229 Mich 303, 307-308; 200 NW 950 (1924) (open murder charge leaves it open to jury to find either degree of murder or manslaughter as the proof warrants);

---

[12] The Legislature may well have had a simple pragmatic reason for allowing informations charging murder without specification of degree: the difficulty of obtaining hard evidence of premeditation and deliberation at an early stage—within twelve days of arraignment on the complaint—of the criminal prosecution. Another possible reason would be a legislative choice to permit the decision on premeditation and deliberation, often a pure credibility question, to be made by the jury rather than by the magistrate. A third rational basis is that the statute simply codifies the common law.

[13] The opinion for reversal, *post,* pp 136-137, has a curious interpretation of the "presumption of constitutionality" which legislative enactments have traditionally been held to possess. The opinion concludes that because there is a question concerning the rational basis for the legislative decision to allow the open murder charge, the statute must fall. Thus, there is actually a presumption of *unconstitutionality* applied by the dissent in the instant case. The proper analysis is that if a "plausible" rational basis can be imagined, the statute must be upheld. *United States Railroad Retirement Bd v Fritz,* 449 US 166, 179; 101 S Ct 453; 66 L Ed 2d 368 (1980).

*People v Simon,* 324 Mich 450, 457-458; 36 NW2d
734 (1949) (information charged murder without
specifying degree; jury must ascertain the degree).

Neither *People v Duncan,* 388 Mich 489; 210
NW2d 629 (1972), nor *Yaner v People,* 34 Mich 286
(1876), provides precedent for reversal in the in-
stant case. In *Duncan,* the Court did not overrule
an express statutory provision on the sole basis of
inherent judicial power as we would have to do in
the instant case. Whatever the proper scope of this
Court's inherent power, properly exercised legisla-
tive power such as that in the instant case is
entitled to a degree of deference. *Yaner* dealt with
a situation in which the magistrate failed to find
evidence to support a charge of *murder* as opposed
to *manslaughter. Id.,* p 286. *Yaner* thus did not
deal with the question presented by the instant
case.

The opinion for reversal expresses concern for
the discretion given to prosecutors by MCL 767.71;
MSA 28.1011. This analysis overlooks the fact that
this discretion has been given to the prosecution
by the Legislature. It is inappropriate to alter the
legislative scheme by exercise of our inherent
powers merely because of dissatisfaction with the
absence of a standard to determine whether the
prosecutor's discretion has been "reasonably exer-
cised."

The only discretion provided to the prosecutor
by the open murder statute is the choice of specify-
ing the degree of murder—that is, first- or second-
degree—or merely specifying murder. Either
choice requires evidence of malice aforethought,
the factor which distinguishes murder from man-
slaughter. We have previously recognized that the
decision whether or not to prosecute, and what
charge to bring, generally rests in the prosecutor's
discretion. See, e.g., *People v Ford,* 417 Mich 66,

91-93; 331 NW2d 878 (1982) (opinion of WILLIAMS, J.) (no abuse of prosecutorial discretion where there is a choice of charging larceny in a building [a felony] or general larceny [a misdemeanor] for the same act); *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974) (prosecutor has discretion to charge a greater, rather than a lesser-included, offense); *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972) (choice of statute under which to prosecute is an executive function properly exercised in general by the prosecutor, not the court). The exercise of prosecutorial discretion generally does not violate equal protection unless the choice is deliberately based upon an invidious standard of a suspect classification or impinges upon a fundamental interest without a compelling state interest. See, generally, *People v Ford, supra,* pp 101-105.

Whether or not there are outmoded or currently viable policy concerns underlying the statutes is a proper consideration for the legislative process, not the judicial arena. Where the Legislature has enacted a constitutionally valid statutory scheme within its legislative authority, this Court should not overrule it simply as a matter of our own preference. "The mere fact a statute appears impolitic or unwise is not sufficient for judicial construction but is a matter for the legislature." *Lansing v Lansing Twp,* 356 Mich 641, 648; 97 NW2d 804 (1959).

V

SUFFICIENCY OF EVIDENCE AT BINDOVER

Even if evidence of premeditation and deliberation were required at the bindover, there was sufficient evidence in the instant case. In *People v*

*Doss,* 406 Mich 90, 101; 276 NW2d 9 (1979), this
Court reversed a Court of Appeals decision over-
turning a trial court's denial of a motion to quash.
We there noted, without precisely defining the
burden of proof which must be met at examina-
tion, that " 'there must be evidence on each ele-
ment of the crime charged or evidence from which
those elements may be inferred.' " There was testi-
mony that the victim retreated into the bathtub,
the defendant pursued him into the tub, and de-
fendant stabbed him again. As the magistrate and
the trial judge recognized, pursuit of a fleeing
victim can indicate premeditation and delibera-
tion. *People v Tilley,* 405 Mich 38; 273 NW2d 471
(1979).

It is clear on this record that there was evidence
from which the magistrate could have inferred
premeditation and deliberation, and it is therefore
manifest that we, as a reviewing Court, cannot
disturb the determination of the magistrate.[14] As

[14] While the opinion for reversal bases its result upon an admittedly
*nonconstitutional* error, *post,* pp 137-138, it errs in the standard it
applies to determine whether the error is harmless. Certain constitu-
tional violations require automatic reversal. See, e.g., *Gideon v Wain-
wright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963) (denial of
counsel at trial). Other constitutional violations are measured by the
standard that requires a court to be convinced "beyond a reasonable
doubt that the error complained of did not contribute to the verdict
obtained." *Chapman v California,* 386 US 18, 24; 87 S Ct 824; 17 L Ed
2d 705 (1967) (commenting on defendant's failure to testify at trial
could be harmless error); *Rose v Clark,* 478 US —; 106 S Ct 3101; 92 L
Ed 2d 460 (1986) (jury instruction shifting the burden of proof to the
defendant can be harmless error). *Nonconstitutional* violations, such
as that alleged in the instant case, are measured by a third standard
in the federal system: The defendant must show a reasonable proba-
bility that the error affected the outcome of the trial. See *United
States v Mechanik,* 475 US 66; 106 S Ct 938; 89 L Ed 2d 50 (1986) (no
reversal for grand jury error unless the error affected the outcome of
the trial). The proposed Michigan Rules of Criminal Procedure would
adopt a similar standard for error at the preliminary examination:
"Absent a showing of prejudice, a court may not reverse an otherwise
valid conviction because of either a violation of these subrules or an
error in failing to dismiss an information for violation of these
subrules." Proposed MCR 6.107(G), 422A Mich 28 (1986). Thus, for a

we stated in *People v Dellabonda,* 265 Mich 486, 491; 251 NW 594 (1933):

> This court may not agree with the findings of such magistrate but it has no right to substitute its judgment for his except in case of a clear abuse of discretion.

It is not here disputed that the jury verdict of second-degree murder was supported by the evidence. The jury thus rejected defendant's claim of self-defense. Since there was enough evidence at trial to take the issue of premeditation and deliberation to the jury, any error at the preliminary examination must be considered harmless in view of the lack of any actual prejudice[15] to the defendant's right to a fair trial.[16]

nonconstitutional *error such as that alleged in this case,* the conviction should only be reversed where the defendant has shown prejudice as a result of the alleged error.

[15] There is no basis on this record to assume that the jury's verdict was a product of compromise. There is simply no more reason for assuming that jurors have compromised on a verdict when there is an erroneous charge than there is to believe they have simply reached a middle ground when several instructions are correctly given. If there was error in allowing the first-degree murder charge to go to the jury, the jury corrected that error by acquitting defendant of that charge and returning a proper verdict of second-degree murder. Most courts agree that a proper verdict of second-degree murder cures an error in instructing a jury on first-degree. See Anno: *Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense,* 15 ALR4th 118, 164-166, § 21(a). While Michigan cases have not agreed, *id.,* § 21(b), any other conclusion is based on judicial speculation that jurors who would have acquitted the defendant have compromised their views despite an express direction from the trial court to the contrary.

The trial judge instructed the jury concerning deliberations as follows:

> Now, when you go to the jury room, your deliberations should be conducted in a businesslike manner. You shall first select a foreman. She or he should see to it that the discussion goes forward in a sensible and orderly fashion and that each juror has the opportunity to discuss the issues fully and fairly.
>
> Remember, a verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you

VI

CONCLUSION

Open murder includes both first- and second-degree murder. The circuit court acquired jurisdiction of the defendant as to both. MCL 766.13; MSA 28.931. Jurisdiction having been conferred by the Legislature on the circuit court by MCL 766.13; MSA 28.931 and MCL 767.71; MSA 28.1011, it would be inappropriate to wrest such jurisdiction from the circuit court solely because, as a court, we may think it is a good idea. The jurisdiction of

agree upon that verdict. In the jury room you will discuss the case among yourselves, but ultimately each of you will have to make up your own mind. Any verdict must represent the individual, considered judgment of each one of you.

It is your duty to consult with your fellow jurors and to deliberate with a view to reaching an agreement, if you can do so without violating your own judgment.

Before deciding the case, give impartial consideration to the views of your fellow jurors. This means that you should give respectful consideration to one another's views and talk over differences of opinion in a spirit of fairness and frankness.

It is natural in a case of this type that differences may arise. When they do, each of you should not only express your opinion but also the facts and reasons upon which you base it. By reasoning the matter out, it is often possible for all of you to agree.

In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you're convinced that it is wrong.

However, *none of you should surrender your honest conviction as to the weight and effect of the evidence or lack of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.* [Emphasis added.]

The above instructions are in substantial accord with CJI 3:1:18, Deliberations and Verdict.

[16] See proposed MCR 6.107(G), 422A Mich 28, which provides that errors at the preliminary examination must actually prejudice the defendant before an appellate court can reverse an otherwise valid conviction. As the commentary to proposed MCR 6.107 notes, "[w]hen the preliminary examination error does not affect the trial, reversal of a conviction creates a windfall for the defendant." 422A Mich 34.

the trial court, conferred by a valid legislative act, should not be invalidated by judicial fiat.

Therefore, we would affirm the decision of the Court of Appeals.

Brickley and Riley, JJ., concurred with Boyle, J.

Williams, C.J. (*concurring* with Justice Boyle). I concur with part v of Justice Boyle's opinion regarding the sufficiency of the evidence of premeditation and deliberation at the preliminary examination. While this Court may disagree with the findings of a magistrate at preliminary examination, it may not substitute its judgment for that of the magistrate except in the case of a clear abuse of discretion. *People v Doss,* 406 Mich 90, 101; 276 NW2d 9 (1979). In my opinion, a clear abuse of discretion did not occur in this case.

There was evidence that the defendant approached the bathroom with his hand in the pocket in which he carried his knife. When confronted by the victim, Tower, defendant opened his knife with both hands, verbally challenging the victim. When, after receiving the first wound, the victim retreated into the bathtub, the defendant pursued him and stabbed him again. Although these events unfolded quickly, it was not shown that they were instantaneous. Witnesses at the preliminary examination put the total elapsed time at two seconds to a couple of minutes.[1] Al-

---

[1] There are three references in the preliminary examination transcript to the lapse of time regarding the incident in the bathroom. The first occurs in the testimony of witness Rick Urbina:

*Q.* How long, Mr. Urbina, from the time that Roy Towers [sic] asked Henry what was goin' on or, "What are you doin' " or whatever his exact words are, would you say it was between that time and the time he was stabbed?

*A.* Maybe about two seconds.

though the issue is close, I believe the evidence
was sufficient to create a factual question whether
the defendant had time to subject his actions to a
"second look."

---

*Q.* How long would you say it would have been, if you can
estimate, and if you can't, say you can't, from the time that
Henry says, "Come on," and Roy gets stabbed?
*A.* Well, I'd say it would be about two seconds at the most. It
wasn't too long, 'cause it happened quick.
*Q.* How long would you say this total thing happened, you
know, it took for this whole thing to occur in the bathroom
before you left out of there?
*A.* How long, okay, it took for everything that happened or
before it started?
*Q.* Well, from the time Henry got in the door until you were
able to get out of there, how long would you say you were in
there?
*A.* Well, I really can't answer that. I don't know.

The second reference is in the testimony of Flip Lake:

*Q.* Just answer my question. How long between the time he
went into the bathroom and the time that he came out?
*A.* I don't know.
*Q.* A short time?
*A.* Yep.
*Q.* Just a couple of seconds?
*A.* Uh-huh.

The third reference is by Barbara Reed:

*Q.* Okay. And what did Henry say then?
*A.* I don't know.
*Q.* You don't recall him saying . . .
*A.* No.
*Q.* . . . anything?
*A.* I remember—all I remember him saying, when he walked
in the bathroom, he told Mr. Tower, "Hey, this is not, you
know, your concern, you know." I mean this . . .
*Q.* Okay, he said, "It's none of your concern." Who was he
talking to, then?
*A.* He was talking . . .
*Q.* Mr. Urbina, to you or Towers [sic]?
*A.* To Mr. Tower.
*Q.* And how long after that was it that you saw Henry with
his knife in his hand?
*A.* Oh, moments. A couple minutes, you know.

The dissenting opinion states that the defendant did not know the victim. Although Barbara Reed testified that the two men were not acquainted, logic dictates that such a statement from a third party cannot be regarded as conclusive. It is not possible for a person to know that two other people don't know each other. Even if the men were not previously acquainted, there were other factors which suggested possible motives, including their relationships with Barbara Reed, and the victim's apparent indignation regarding the defendant's rough treatment of her. In any event, an apparent lack of motive does not preclude consideration of a first-degree murder charge. Motive is a relevant but not essential fact in proof of murder. *People v Kuhn,* 232 Mich 310, 312; 205 NW 188 (1925).

Although the evidence supporting a verdict of first-degree murder was sketchy, and that charge was ultimately rejected by the jury, it was, in my opinion, within the magistrate's discretion to allow the case to proceed to trial on that charge.

I concur generally with the remainder of Justice BOYLE's opinion, particularly with regard to the defendant's constitutional arguments.

LEVIN, J. (*dissenting*). Johnson was bound over on a charge of open murder and convicted of second-degree murder.

At the conclusion of the preliminary examination, the magistrate declined to find whether there was sufficient evidence to bind Johnson over on a charge of first-degree murder and stated that it was sufficient that the killing was committed with malice aforethought and that Johnson would be bound over on a charge of open murder.

The magistrate reviewed the testimony concerning whether there was sufficient evidence of pre-

meditation and deliberation. He quoted from *People v Spalla,* 83 Mich App 661, 665; 269 NW2d 259 (1978), where the Court said that the "magistrate was not required to specify the degree of murder charged, even though a request for such particularization was made by the defendant. When the charge encompasses first-degree murder the ultimate finding as to degree is for the jury." The magistrate observed that *Spalla* had been reversed on other grounds, *People v Spalla,* 408 Mich 876 (1980), but concluded that "the law that I just stated in *Spalla* is the state of the law, since that particular portion of the opinion was not reversed."

Johnson's motion to quash the information was denied. The Court of Appeals affirmed Johnson's conviction and, on this aspect of the matter, relied on *Spalla.*

I

The lead opinion states that "[t]he 'open murder' statute, MCL 767.71; MSA 28.1011, recognizes that murder is a single offense and that, at the *informational* stage, no specification of degree is required." (Emphasis in original.) The statute referred to provides:

> In all indictments for murder and manslaughter it shall not be necessary to set forth the manner in which nor the means by which the death of the deceased was caused; but it shall be sufficient in any indictment for murder to charge that the defendant did murder the deceased; it shall be sufficient in manslaughter to charge that the defendant did kill the deceased.[1]

I agree that an information charging open mur-

---

[1] MCL 767.71; MSA 28.1011.

der is not defective per se. It is a separate question whether a person who has demanded a preliminary examination and is bound over on open murder can be tried and convicted of first-degree murder unless sufficient evidence was offered at the preliminary examination to justify a finding of probable cause that he committed the offense of first-degree murder and the magistrate bound him over on such a finding.

The statute described in the opinion of the Court as the " 'open murder' statute" was enacted in 1855.[2] Then, as the language of the statute indicates, all prosecutions were by indictment. Four years later, the Legislature first provided for prosecution by information in lieu of grand jury indictment. The 1859 legislation further provided:

> No information shall be filed against any person for any offense, until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such person shall waive his right to such examination.[3]

The Legislature did not otherwise prescribe the form of the examination. In 1927, however, as part of the Code of Criminal Procedure, the Legislature expanded upon the terse 1859 provision at some length regarding the preliminary examination.[4]

The scope and effect of the preliminary examination was left largely to the courts to develop. The rule is well-established that there must be evidence on *each element* of the charged offense or evidence from which those elements may be in-

---

[2] 1855 PA 77; 1857 CL 6047; MCL 767.71; MSA 28.1011.

[3] 1859 PA 138; 1871 CL 7944. This provision has been carried forward and is now MCL 767.42; MSA 28.982.

[4] 1927 PA 175, ch VI; 1929 CL 17193-17214; MCL 766.1-766.22; MSA 28.919-28.940.

ferred.[5] Premeditation and deliberation are clearly elements of first-degree murder.

II

The lead opinion refers to earlier decisions of this Court, but none is controlling on the question presented. In *Cargen v People,* 39 Mich 549 (1878), the defendant waived an examination, and thus nothing said in *Cargen* could bear on the question now presented.[6]

---

[5] See *People v Irby,* 129 Mich App 306, 321; 342 NW2d 303 (1983); *People v Waters,* 118 Mich App 176, 183; 324 NW2d 564 (1982); *People v Kubasiak,* 98 Mich App 529, 532; 296 NW2d 298 (1980); *Wayne Co Prosecutor v Recorder's Court Judge,* 92 Mich App 119, 122; 284 NW2d 507 (1979); *People v Lester,* 78 Mich App 21, 29; 259 NW2d 370 (1977); *People v Melvin,* 70 Mich App 138, 142; 245 NW2d 178 (1976); *People v Oster,* 67 Mich App 490, 495; 241 NW2d 260 (1976); *People v Martinovich,* 18 Mich App 253, 257; 170 NW2d 899 (1969); see also *People v King,* 412 Mich 145, 154; 312 NW2d 629 (1981); *People v Salazar,* 124 Mich App 249, 252; 333 NW2d 567 (1983).

[6] The cause in *Cargen* had been certified to the circuit court on the basis of an examination following the filing of a complaint and before the arrest warrant was issued. The court simply stated that it was not necessary that the complaint, the arrest warrant, or the certification by the magistrate specify whether the offense was murder of the first or the second degree. *Cargen,* referred to three cases, *Brownell v People,* 38 Mich 732 (1878), *Turner v People,* 33 Mich 363 (1876), and *Yaner v People,* 34 Mich 286 (1876).

*Brownell* does state that a "return," apparently following a preliminary examination, was not defective in failing to state the degree of the offense:

The offense charged was murder, and inasmuch as the indictment or information does not state the degree, which must be found by the jury, there seems to be no defect in a commitment which describes the offense as it is charged. Upon a question of bail, the real character of the charge and the degree must in some way appear, inasmuch as murder in the second degree is bailable by a justice. Comp. L., § 7868. The statutes are certainly not in a very satisfactory shape, but we think *it would be going too far to hold a commitment bad, for terms which would be good in an indictment.* [Emphasis supplied. *Id.,* 734.]

The Court did not address the question whether a person might be tried and convicted of first-degree murder absent sufficient evidence

In *People v McArron,* 121 Mich 1; 79 NW 944
(1899), the Court held that the defendant could be
convicted of manslaughter on an information
charging murder and said that because an infor-
mation for manslaughter would have been suffi-
cient if it had averred that the defendant did kill
and slay the decedent, an information charging
that the defendant did kill and murder the dece-
dent was not deficient.

In *People v Treichel,* 229 Mich 303, 307; 200 NW
950 (1924), the question was whether the defen-
dant could be convicted of the lesser offense of
manslaughter or could only be acquitted or con-
victed of felony murder. In holding that he could
be convicted of the lesser offense, the Court did
indeed indicate that a person charged with open
murder could be convicted of either degree of

tending to establish probable cause that he had committed first-degree
murder and a finding of probable cause of commission of the higher
degree of the offense. The Court said rather that since an indictment
of open murder was sufficient, an information could be filed charging
open murder. In so holding, the Court observed that "the statutes are
certainly not in a very satisfactory shape" and that on the question of
bail "the real character of the charge and the degree *must* in some
way appear" (emphasis supplied) because a charge of second-degree
murder was bailable.

In *Turner,* the defendant was convicted of rape. The statutes
referred to, 1871 CL 7859, 7860, were §§ 17 and 18 of ch 163 of the
Revised Statutes of 1846, enacted before preliminary examinations
were first provided for in 1859, and concern the examination on the
complaint before issuance of an arrest warrant.

In *Yaner,* the defendant, who was arrested, examined, and held for
trial on a complaint and information charging murder, was found
guilty of manslaughter. He had moved to quash on the ground that
the magistrate had refused to determine whether the facts proven on
the examination amounted to manslaughter or murder. The magis-
trate acknowledged that he had so ruled because he believed the
question was for the jury and not for the magistrate. This Court held
that the accused may not be put on trial for an offense different or
greater than that for which he had been examined and held for trial
and, because of the refusal of the magistrate to determine from the
evidence adduced upon the examination whether the offense was
murder or that there was probable cause to believe the accused guilty
of such offense, the information should have been quashed, the
judgment of conviction set aside, and the defendant discharged.

murder or manslaughter, but again did not address the question whether a person could be tried for a higher offense than had been established by the evidence at the preliminary examination and found by the magistrate.

In *People v Simon,* 324 Mich 450, 457; 36 NW2d 734 (1949), the information charged murder without specifying the degree. The Court held that the verdict "guilty as charged" was defective because the jury had not ascertained the degree.

### III

None of the decisions cited in the lead opinion consider the question whether a person bound over on a charge of open murder can be tried and convicted of first-degree murder absent evidence at the preliminary examination establishing the elements of the higher offense of first-degree murder and a finding by the magistrate that there is probable cause to believe that the higher offense has been committed. There being nothing in the decisions cited or in any other case that on further research we have been able to find addressing the question, I conclude that the question is not controlled by any decision of this Court.

Nor is there anything in the statutes concerning the preliminary examination enacted in 1859 or 1927 that would justify the conclusion that in providing for a preliminary examination preceding the filing of an information in lieu of a grand jury indictment, the Legislature did not intend to require that all the elements of what is probably the most serious offense known to the law of this state be established before an information could be filed. Acknowledging that an information may take the same form as an indictment, surely the Legislature did not, in enacting in 1855 the " 'open mur-

der' statute," legislate concerning the preliminary examination first provided for four years later.

We would, therefore, hold—consistent with the decisions holding or stating that a person may be tried on a charge of open murder and yet convicted of first-degree murder—that where an examination has been demanded he may be tried and convicted of first-degree murder only where the people produce sufficient evidence to establish probable cause to believe that the offense of first-degree murder has been committed and the magistrate so determined.

## IV

Where the magistrate is requested to determine the degree of the offense of murder and nevertheless fails to do so, his return is defective.[7]

In the instant case, the magistrate erroneously concluded, on the authority of *People v Spalla,* that he was not required to determine the degree of the offense of murder established by the evidence produced at the preliminary examination.

## V

The lead, concurring, and dissenting opinions address the question whether there was sufficient evidence produced at the preliminary examination to establish premeditation and deliberation. The rule is well-established, however, that the question of probable cause is for the consideration of, and determination by, the examining magistrate and that this Court does not substitute its appraisal

---

[7] See *Yaner v People,* n 6 *supra.*

unless it concludes that there has been an abuse of discretion.[8]

It has also been suggested that insufficiency of evidence at the preliminary examination can be cured by additional evidence introduced at the trial. Again the rule is well-established that where the defendant moves to quash and thereby preserves the issue and it is determined that the evidence was not sufficient, the remedy, even after conviction and without regard to the sufficiency of the evidence at trial, is to set aside the conviction and to discharge the defendant.[9] The entry of such an order does not preclude the prosecutor from again charging the defendant and bringing him to trial.

CAVANAGH, J., concurred with LEVIN, J.

ARCHER, J. I respectfully dissent.

[8] See *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 121; 215 NW2d 145 (1974); *People v Dellabonda*, 265 Mich 486, 491; 251 NW 594 (1933); *People v Talley*, 410 Mich 378, 385; 301 NW2d 809 (1981).

[9] See *People v White*, 276 Mich 29, 31-32; 267 NW 777 (1936), where this Court said:

> The failure of the people to sustain their charge may be unfortunate, *in view of the subsequent testimony at the trial,* but it would be more unfortunate to upset *established and well-understood rules of law.* [Emphasis supplied.]

Similarly see *People v Kennedy*, 9 Mich App 346, 348; 155 NW2d 855 (1968).

Any other rule would deprive the accused of any remedy for a defect in the conduct of a preliminary examination. Manifestly, the accused cannot be convicted unless sufficient evidence is adduced at the trial; if the sufficiency of the evidence at the trial cured an insufficiency at the preliminary examination, there would be no remedy unless the circuit judge quashed the information or the Court of Appeals or this Court granted an interlocutory appeal from an adverse decision by the circuit judge. Interlocutory appeals are infrequently granted defendants in criminal cases, and, thus, if there is to be any review of the circuit judge's decision, it can occur only, in the ordinary case, after trial and conviction.

FACTS

An extended relation of the evidence presented at the preliminary examination is required because of its bearing on the issues raised in this appeal. In the early morning hours of July 9, 1983, defendant and two male friends arrived at a party at the apartment of Barbara Reed, a former girlfriend of defendant. Her guests had been drinking and were intoxicated. According to Barbara Reed's testimony, defendant wanted to talk with Rick Urbina, who was in the bathroom talking to Roy Tower, the manager of the apartment building.

Reed and the defendant went into the bathroom. There were conflicting versions of testimony as to how the altercation at issue ensued; it started, apparently, when the victim, Tower, got upset because Ms. Reed landed in the bathroom, either from stumbling or having been shoved in. Witnessing Reed's landing, Tower stepped forward and inquired of the defendant what was going on, and, according to one witness, Tower used profanity when making his inquiry. Defendant testified that the victim drew a hunting knife, and while holding it at shoulder height, advanced toward defendant. Urbina testified that defendant entered the bathroom, pulled and opened his knife, told Tower, "Come on, mother-fucker," stabbed him, backed him up against the wall inside the tub, and stabbed him again around the chest area. Urbina also testified that the victim had a knife, but that he never took it out of the case inside his pants. Reed, however, corroborated defendant's version that the victim had a knife in his hands.

According to testimony by one party guest who observed the incident while standing by the bathroom door, defendant had his hand in his right pocket, where the knife was located, from the time

he entered the apartment until he opened the
knife and went after the victim. The testimony of
the witnesses varied as to the time lapse between
defendant's entrance to and exit from the bath-
room. All agreed that the entire incident happened
within seconds, except Reed who admitted that she
was not good at estimating time.[1]

It is undisputed that defendant stabbed the vic-
tim during the altercation in the bathroom and
that the victim died from a stab wound to the
heart. Although there was testimony that the
victim was at some point, standing in the bathtub,
it is unclear as to whether he retreated there or
was shoved there in an attempt to allow the
defendant time to retreat. There were, according
to the pathologist, three stab wounds to the vic-
tim's chest, a wound on the back of the right
buttock, plus several very tiny cut wounds on the
upper extremities. The pathologist could not deter-
mine if these minor wounds occurred during the
course of the bathroom incident. Only the chest
wound to the heart was fatal; the other wounds
"were of a relatively trivial nature." There were
no wounds found on the defendant. None of the
victim's wounds were defensive wounds. The pa-
thologist further testified that, upon the basis of
his examination of the body, he could reach no
conclusion as to whether defendant or Tower had
been the aggressor. It appears from the testimony
that the victim was a tall, slender male. Defendant
is a larger-built man.

Although defendant had known Rick Urbina,
there was uncontroverted testimony that he was a
total stranger to the victim before the occurrence
in the bathroom. Defendant was not intoxicated.

---

[1] Reed testified that the events in the bathroom took a "little bit of
time," and that the defendant and Tower tussled "momentarily."

The victim was intoxicated, with a blood alcohol level of 0.14.

I

Defendant claims that the Court of Appeals erred in holding that the charge of open murder does not violate equal protection or procedural due process principles. He contends that, as a class, those charged with homicide in Michigan under the open murder statute, MCL 767.44; MSA 28.984, are treated differently. The prosecutor need not show all the elements of an offense at a preliminary examination in order to secure a bind-over order on a charge of open murder. Yet, according to defendant, there appears to be no rational basis for the disparate treatment afforded those charged with murder.

Michigan courts have long recognized the propriety of the open charge of murder. *Brownell v People,* 38 Mich 732 (1878); *Cargen v People,* 39 Mich 549 (1878); *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955); *People v McKinney,* 65 Mich App 131; 237 NW2d 215 (1975). Statutes similar to Michigan's "open murder" statute have been found to be constitutional and not violative of defendant's federal due process rights. *Bergemann v Backer,* 157 US 655; 15 S Ct 727; 39 L Ed 845 (1895); *Kohl v Lehlback,* 160 US 293; 16 S Ct 304; 40 L Ed 432 (1895).[2] In 1895, when stating that open murder indictments, or their equivalent at that time, were consistent with the due process of law required by the Fourteenth Amendment of the United States Constitution, the United States Supreme Court cited a New Jersey Chief Justice's reasoning:

---

[2] We find no case law where the propriety of the open murder charge is discussed in terms of equal protection rights.

[A]n indictment charging, in a general form, the perpetration of a murder, without indicating which of the two felonies into which that offense was divided by the statute, was sufficient to fulfill the constitutional requirement of informing the defendant of the nature and cause of the accusation against him. The effect of the statute . . . was neither to add any case to nor take any case from the class of crimes which, at common law, was denominated murder, for every act that was murder at common law was still murder in New Jersey. What the statute effected . . . was to distribute the offense into two classes for the sake of adjusting the punishment. [*Bergemann v Backer,* at 657, citing *Graves v State,* 45 NJL 203 (1894). Accord *People v Potter,* 5 Mich 1 (1858); *People v Scott,* 6 Mich 287 (1859).]

Michigan's "open murder" statute provides in pertinent part:

The following forms may be used in the cases in which they are applicable but any other forms authorized by this or any other law of this state may also be used:

\* \* \*

Murder—A.B. murdered C.D.
Manslaughter—A.B. killed C.D.

Neither the complaint nor the information charged the defendant with "open murder" under MCL 767.44; MSA 28.984. Rather, both documents charged the defendant with murder pursuant to Michigan's first-degree murder statute, MCL 750.316; MSA 28.548, which provides, in pertinent part:

Murder which is perpetrated by means of . . . wilful, deliberate, and premeditated killing, . . . is murder of the first degree, and shall be punished by imprisonment for life.

While the magistrate's bind-over order and the trial court's denial of defendant's motion to quash the open murder charge, on the basis of a showing of no premeditation or deliberation, made it necessary for the defendant to defend first-degree murder, there was no denial of due process. The open murder charge sufficiently informed the defendant of the nature and cause of the accusations against him. The Due Process Clauses of the federal and state constitutions do not require a preliminary examination in criminal proceedings. *People v McCrea,* 303 Mich 213; 6 NW2d 489 (1942). There was no due process violation. The open murder charge allowed a distinction in the murder charge with a view to a difference in punishment between the most heinous and the less aggravated grades of the same crime. Due process guarantees are limited:

> While it is clear that our society has willingly chosen to bear a substantial burden in order to protect the innocent, it is equally clear that the risk it must bear is not without limits. . . . Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person. Punishment of those found guilty by a jury, for example, is not forbidden merely because there is a remote possibility in some instances that an innocent person might go to jail. [*Patterson v New York,* 432 US 197, 208; 97 S Ct 2319; 53 L Ed 2d 281 (1977).]

Although I conclude that the charge of open murder does not violate any procedural due process principles, it raises serious questions of equal protection,[3] as defense counsel in this case ably

[3] US Const, Am XIV provides in pertinent part, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

argues, in that a defendant charged under "open murder" is treated differently than persons charged with other felony offenses. MCL 766.4; MSA 28.922, the statute which sets forth the basic right to a preliminary examination, makes no distinction between murder and other felonies.[4] Yet, as a class, those bound over in Michigan under the open murder statute, MCL 767.44; MSA 28.984, are treated differently.

When charging any other felonies, the prosecuting attorney must show at the preliminary examination evidence on each element of the offense in order to bind the defendant over. If he fails to do so, the defendant can only be bound over on such offense as may be supported by the evidence produced. See *People v Smith*, 49 Mich App 630; 212 NW2d 768 (1973) (LEVIN, J., dissenting). Proofs upon which to base the findings required by the statute must be introduced at a preliminary examination to justify binding over to circuit court for trial. *People v Asta*, 337 Mich 590, 611; 60 NW2d 472 (1953). Although at preliminary examination positive proof of guilt is not required, there must be *some* evidence on *each* element of the crime charged, or some evidence from which those elements may be inferred. *People v Goode*, 106 Mich App 129; 308 NW2d 448 (1981), lv den 413 Mich

---

Const 1963, art 1, § 2 provides, "No person shall be denied the equal protection of the laws . . . ."

[4] MCL 766.4; MSA 28.922 provides:

The magistrate before whom any person is brought on a charge of having committed a felony shall set a day for a preliminary examination not exceeding 12 days thereafter, at which time a magistrate shall examine the complainant and the witnesses in support of the prosecution, on oath in the presence of the accused, in regard to the offense charged and in regard to any other matters connected with the charge which the magistrate considers pertinent.

866 (1982). Such is not the case with the open murder charge.

Of those charged with murder, if the charge is first-degree murder, the prosecution must show evidence of premeditation and deliberation at the examination stage, or the matter may not be bound over on a charge of first-degree murder. *People v Oster*, 67 Mich App 490; 241 NW2d 260 (1976); *People v Mathis (On Remand)*, 75 Mich App 320; 255 NW2d 214 (1977) (HOLBROOK, J., dissenting). However, for those charged under the open murder statute, Michigan case law holds that no evidence of deliberation or premeditation must be shown. See, e.g., *People v Spalla*, 83 Mich App 661; 269 NW2d 259 (1978), *People v Melvin*, 70 Mich App 138; 245 NW2d 178 (1976), and *People v Strutenski*, 39 Mich App 72; 197 NW2d 296 (1972). Because it is for the jury to determine the degree of murder committed, *Spalla, Melvin,* and *Strutenski* do not require the district judge or magistrate to determine the degree of murder at preliminary examination. However, there appears to be no rational basis for the holding, when it applies only to open murder informations.

The lead opinion buries in a footnote that the "Legislature may well have had a simple pragmatic reason for allowing informations charging murder without specification of degree: the difficulty of obtaining hard evidence of premeditation and deliberation at an early stage—within twelve days of arraignment on the complaint—of the criminal prosecution." This "simple pragmatic reason" is insufficient when the constitutional guarantee of equal protection is at stake.

While we agree with the lead opinion that the federal constitution does not require a preliminary examination as a condition precedent to prosecution by filing of an information, *Gerstein v Pugh,*

420 US 103; 95 S Ct 854; 43 L Ed 2d 54 (1975), we also note that in Michigan, the right of a defendant to a preliminary examination is a "fundamental right in most criminal cases," *People v Duncan,* 388 Mich 489, 502; 201 NW2d 629 (1972). The United States Supreme Court has also found the preliminary examination to be a "critical stage" in criminal proceedings. *Coleman v Alabama,* 399 US 1, 9; 90 S Ct 1999; 26 L Ed 2d 387 (1970). This Court has also previously held that Michigan's constitutional guarantee of equal protection is committed to the standards of the Fourteenth Amendment. *Wolodzko v Wayne Circuit Judge,* 382 Mich 528; 170 NW2d 9 (1969); *Moore v Spangler,* 401 Mich 360; 258 NW2d 34 (1977); *Green v Court Administrator,* 44 Mich App 259; 205 NW2d 306 (1972).

As the Court of Appeals stated in *People v Perkins,* 107 Mich App 440, 443; 309 NW2d 634 (1981):

> Equal protection analysis requires an initial determination of the proper test to be applied. If the statute affects a fundamental interest or makes an inherently suspect classification, a strict scrutiny test is appropriate and the statute will not be upheld unless the classification is justified by a compelling state interest. Absent a fundamental interest or suspect classification, the alternative test places the burden on the party challenging the statute to show that the classification is arbitrary and not reasonably or rationally related to the object of the legislation. *McAvoy v H B Sherman Co,* 401 Mich 419, 452-454; 258 NW2d 414 (1977), *People v Schmidt,* 86 Mich App 574, 578; 272 NW2d 732 (1978).

While murder suspects have not yet been treated as a "suspect classification" requiring heightened judicial scrutiny for equal protection

purposes, see *Marshall v United States,* 414 US 417; 94 S Ct 700; 38 L Ed 2d 618 (1974), differences in treatment of criminal offenders must, at least, bear some *rational relationship* to a legitimate state end. *People v O'Donnell,* 127 Mich App 749, 757; 339 NW2d 540 (1983), lv den 418 Mich 940 (1984); see *McDonald v Bd of Election Comm'rs,* 394 US 802, 809; 89 S Ct 1404; 22 L Ed 2d 739 (1969). The lead opinion asserts that several rational bases can be "imagined," yet it suggests only three possible, but not plausible, reasons for allowing open murder informations, and then gives us absolutely no authority for them. Even applying the rational basis test, I can surmise no circumstances which would justify handling a murder case involving a charge under the open murder statute any differently than one involving a charge under the first-degree or second-degree statute.

The reasoning submitted by the lead opinion for allowing informations charging murder without specificity of degree does not carry the state's burden of a rational relationship to a legitimate state end. The language of both US Const, Am XIV, § 1 and Const 1963, art 1, § 2 makes it clear that disparate treatment of persons under the law is unconstitutional. Since there is a serious question as to whether there is a rational basis for the discrepancy in treatment afforded those charged under the first-degree murder statute and the open murder statute, the open murder statute should fail as a result of the violation of defendant's right to equal protection of law. See *Walls v Director of Institutional Services,* 84 Mich App 355; 269 NW2d 599 (1978), and *Mitchell v Johnson,* 488 F2d 349 (CA 6, 1973).

In approving of and defending the constitutionality of open murder warrants and complaints, but

not open murder informations, it would be this Court's duty to give the statute only a narrowing construction so as to render it totally constitutional. As noted in *O'Donnell, supra:*

> It is well established that legislative enactments are cloaked with a presumption of constitutionality. Where a statutory provision would otherwise be unconstitutional, it is the Court's duty to give the statute a narrowing construction so as to render it constitutional if such a construction is possible without doing violence to the Legislature's intent in enacting the statute. *People v McQuillan,* 392 Mich 511, 536; 221 NW2d 569 (1974); *Nunn v George A Kantrick Co, Inc,* 113 Mich App 486, 491; 317 NW2d 331 (1982). [127 Mich App 757.]

Notwithstanding the unconstitutionality of open murder informations, we believe the better course is to exercise the inherent power of this Court to deal with the situation as a matter of criminal procedure, as was done in *People v Duncan, supra,* and *People v Bellanca,* 386 Mich 708; 194 NW2d 863 (1972). The courts should not grapple with finding a constitutional question, when the case can be decided on other grounds. See *Ashwander v Tennessee Valley Authority,* 297 US 288, 341-356; 56 S Ct 466; 80 L Ed 688 (1936) (Brandeis, J.); *United States v Lovett,* 328 US 303, 320; 66 S Ct 1073; 90 L Ed 1252 (1946) (Frankfurter, J., concurring); Nowak, Rotunda & Young, Constitutional Law (3d ed), § 2.12, pp 86-87; *Taylor v Auditor General,* 360 Mich 146, 154; 103 NW2d 769 (1960). This Court has long held that the constitutionality of statutes will not be passed upon where the case can be determined without doing so. *Powell v Eldred,* 39 Mich 552 (1878).

Although we approve of and defend open murder warrants and complaints, we have nonconsti-

tutional concerns of the adverse effect that befalls a defendant under an open murder charge after proofs have been presented at the preliminary examination.

When bound over on a charge of open murder, particularly in a case in which there is no evidence of deliberation and premeditation, a defendant must nonetheless prepare to defend first-degree murder as well as lesser-included offenses. Because it carries the greatest penalty, a significant amount of time must be allotted to the defense of the first-degree murder charge, leaving a lesser amount of time to devote to the lesser-included offenses. Because of the severity of the offense and the penalty it carries, a defendant charged with murder should be provided with greater procedural safeguards than those charged with a more minor offense. The probabilities of unfair surprise, inadequate notice, and insufficient opportunity to defend, all relevant to a defendant's right to a fair opportunity to meet the charges against him, are affected, even if not to the point of a constitutional violation.

Currently, the defendant can be bound over on the open murder charge, which includes first-degree murder, even though the facts adduced at the preliminary examination may only show a manslaughter or second-degree murder. The most egregious aspect of this procedure is that when a defendant is bound over on a charge of open murder without a showing of premeditation or deliberation, the magistrate has carte blanche to engage in factfinding concerning elements that have no proof.

As a less onerous alternative to the "open murder" information, a defendant may be charged in a complaint and warrant with "open murder," accord *People v Spells,* 42 Mich App 243; 201 NW2d

676 (1972), but the defendant is to be bound over on a specific degree of murder after proofs are presented at the preliminary examination.[5] Several Court of Appeals decisions have been in harmony with this approach. *People v Juniel,* 62 Mich App 529, 533-538; 233 NW2d 635 (1975); *People v Oster, supra* at 494-498; *People v Johnson,* 105 Mich App 498, 502; 307 NW2d 357 (1981). These cases required proof of premeditation and deliberation at the preliminary examination before the defendant could stand trial for first-degree murder even though the prosecution elected to charge open murder pursuant to the statutory short form. This requirement is also in accord with the language of the "open murder" statute itself, for the statute speaks only to the form of the charging document,[6] not to the prosecutor's burden at preliminary examination. The lead opinion concedes that the information depends upon the bindover for the possible charges, *ante,* p 105, which is consistent with our view.

The requirement that a defendant be charged with a specific degree of murder after presentation of the proofs at a preliminary examination gives both the defendant and the prosecution ample time (twelve extra days) to investigate the matter.[7]

---

[5] Using this approach, we would only overrule the parts of *Spalla, Melvin,* and *Strutenski* which do not require the district judge or magistrate at preliminary examination to determine the degree of murder.

[6] MCL 767.44; MSA 28.984 provides: "The following *forms* may be used in the cases in which they are applicable but any other *forms* authorized by this or any other law of this state may also be used . . . ."

[7] Neither Michigan's speedy trial statute, MCL 768.1; MSA 28.1024, nor its court rule, MCR 6.109, addresses the time period allotted for trial defense preparation. However, the Speedy Trial Act of 1974, as amended in 1979, 18 USC 3161 *et seq.,* only allows a thirty-day trial defense preparation period following the return of an information. See *United States v Rojas-Contreras,* 474 US 231; 106 S Ct 555; 88 L Ed 2d 537 (1985). It would be inconsistent, procedurally, to hold that

Both parties may then come forward with suffi-
cient proofs to enable the magistrate to make a
more informed decision as to whether there is
probable cause to believe premeditation or deliber-
ation is evident.

Specification at bindover also gives the defen-
dant the benefit of concentrating his energies and
resources on preparation of the defense against
the degree of the charge the prosecutor will pur-
sue at trial as reflected in the bill of particulars.[8]
The specific-degree requirement will assist the
district court in its function, which is to bind over
to circuit court. The requirement will also assist
the circuit court, since the circuit court's jurisdic-
tion is limited to the offense specified in the return
of the examining magistrate. *People v Curtis,* 389
Mich 698; 209 NW2d 243 (1973).

The lead opinion implies that requiring the
degree of murder to be specified at bindover de-
parts from a century of judicial recognition of the
use of murder charges of unspecified degree and
unhinges the judicial process. Our decision today
does not disallow complaints and warrants charg-
ing murder without specification of degree. While
we defend the constitutionality of an "open mur-
der" complaint and warrant, we now require the
prosecutor to do no more than if served with the
bill of particulars, but to do it before the magis-
trate's gavel has landed.

twelve days is an insufficient time within which to determine degree,
when, in a first-degree or second-degree murder complaint, the degree
is specified before preliminary examination, and particularly when
the defendant charged, without knowledge of what degree he may
have to defend on under open murder, conceivably is entitled to only
thirty days to prepare for his entire trial defense.

[8] [T]he prosecuting attorney, if seasonably requested by the
respondent, shall furnish a bill of particulars setting up specifi-
cally the nature of the offense charged. [MCL 767.44; MSA
28.984.]

The lead opinion further asserts that the procedural implementation of having the prosecutor supply a bill of particulars *after* the "open murder" information is used, assures that the defendant will have adequate notice in advance of trial of both the charge, and the factual basis underlying the alleged offense. However, specification of degree at bindover allows the defendant the opportunity to be heard *prior* to the leveling of the charge, before it is too late for the defendant to do anything about the charge as laid. Technically, the prosecutor would currently be required to supply the bill of particulars days after the examination, if seasonably requested by the defendant. The lead opinion, therefore, criticizes a common-sense approach which does not substantially change the burden of the prosecutor.

In cases where the defendant waives preliminary examination, the defendant would be required to request a bill of particulars within a reasonable time period. Upon defendant's request for a bill of particulars, the prosecution must determine and advise the defendant of the specific degree of murder on which he is to be tried:

> [T]he prosecuting attorney, if seasonably requested by the respondent, *shall* furnish a bill of particulars setting up specifically the nature of the offense charged. [MCL 767.44; MSA 28.984. Emphasis added.]

More than a century ago, (even before our laws progressed to the point of requiring degree-specified murder) this Court recognized the importance of the magistrate's responsibility to determine the degree of an offense, when, as in this case, the offense charged includes one or more of lesser degree. In *Yaner v People,* 34 Mich 286, 289

(1876), this Court discussed and ruled upon the forerunner of the current statute providing for the procedure the magistrate is to use when discharging or binding a defendant over for trial.[9] In doing so, this Court stated:

> The clear evident intent of this statute was, that the magistrate should exercise his best judgment in the matter; that *he should from the testimony determine whether the crime charged in the warrant had been committed, or where, as in this case, the offense charged includes one or more of lesser degree, the magistrate should determine which offense, if any, had been committed, so that the accused might not be placed upon trial in the circuit to answer to a charge different or greater than the one upon which he had been examined,* and *to answer which he had been held for trial. If this were not so we would have the magistrate binding over for one offense, and the prosecuting attorney filing an information for another or different one, or the magistrate binding over to answer to an offense of one degree, and the prosecuting attorney filing an information for a like offense of a higher degree.* In either case the offense charged in the information would be one not authorized by the examination . . . . [Emphasis added.]

The decisions in *Spalla, Melvin,* and *Strutenski,*

---

[9] MCL 766.13; MSA 28.931 currently provides:

> If it shall appear to the magistrate at the conclusion of the preliminary examination either that an offense has not been committed or that there is not probable cause for charging the defendant therewith, he shall discharge such defendant. If it shall appear to the magistrate at the conclusion of the preliminary examination that a felony has been committed and there is probable cause for charging the defendant therewith, the magistrate shall forthwith bind the defendant to appear before the circuit court of such county, or other court having jurisdiction of the cause, for trial.

*supra,* holding that the magistrate is not required
to specify the degree of murder in an "open mur-
der" charge is in direct contradiction with *Yaner,*
and subjected the defendant to the unfair position
of being placed on trial to answer to a greater
charge (first-degree murder) than the one in which
he had been examined, wherein only the element
of malice was shown.[10]

## II

Defendant also claims that the finding by the
examining magistrate that there was sufficient
evidence of premeditation and deliberation to bind
over on an open charge of murder deprived him of
a fair trial, requiring reversal of his conviction.
Defendant argues that the prosecutor failed to
prove at the preliminary examination that defen-
dant killed Tower with premeditation and deliber-
ation. Consequently, defendant contends he was a
victim of a compromised jury verdict, which re-
sulted in a higher level of conviction than the one
the jury would have entered if the case had been
properly bound over.

At the preliminary examination the prosecution
must show evidence on each and every element of
the offense charged in order for the magistrate to

---

[10] The bench and bar are respectfully advised that this Court is
publishing for comment a court rule requiring the examining magis-
trate to specify the degree of murder for which the defendant is being
bound over for trial:

> An examining magistrate's order binding a defendant over to
> stand trial on a charge of murder must specify the degree of
> murder. The examining magistrate must make a finding
> whether the evidence adduced at the preliminary examination
> established the commission of murder in the first degree or
> murder in the second degree and that there is probable cause
> for charging the defendant with murder in the degree found by
> the magistrate. [Proposed MCR 6.203.]

bind the defendant over for trial on that charge. *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971); *People v Asta,* 337 Mich 590; 60 NW2d 472 (1953). Positive proof of an intent to kill is not required; rather, there need only be evidence of an intent to kill or evidence from which an intent to kill may be inferred. *People v Moore,* 129 Mich App 354; 341 NW2d 149 (1983); *People v Doss,* 406 Mich 90; 276 NW2d 9 (1979); *People v Oster,* 67 Mich App 490, 495; 241 NW2d 260 (1976), lv den 397 Mich 848 (1976).

In determining whether there was evidence presented at the preliminary examination from which an inference of premeditation and deliberation in the killing can be drawn, we have phrased the inquiry as follows:

> [t]o think about beforehand
>
> \* \* \*
>
> [t]o measure and evaluate the major facets of a choice or problem
>
> \* \* \*
>
> [a] thought process undisturbed by hot blood
>
> \* \* \*
>
> [t]he interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look." [*People v Vail,* 393 Mich 460, 468-469; 227 NW2d 535 (1975), as quoted in *People v Oster, supra* at 496-497.]

Types of evidence to be considered from which premeditation and deliberation may be inferred include the prior relationship between the parties, whether the murder weapon had been acquired or positioned in preparation for the homicide, the immediate circumstances of the killing, and the defendant's post-homicide conduct. *People v Alex-*

*ander,* 76 Mich App 71; 255 NW2d 774 (1977);
*People v Oster, supra* at 497; *People v Berthiaume,*
59 Mich App 451, 459; 229 NW2d 497 (1975).

Generally, evidence sufficient to sustain a find-
ing of premeditation and deliberation falls into
three basic categories: (1) evidence which shows
defendant had been engaged in planning the kill-
ing, (2) evidence establishing a motive for the
killing, and (3) evidence that the nature of the
killing was such that the defendant must have
intentionally killed according to a preconceived
design to take his victim's life in a particular way.
*People v Scotts,* 80 Mich App 1, 10; 263 NW2d 272
(1977); *People v Oster* at 497.

The prosecution's argument at the preliminary
examination, in pertinent part, was as follows:

> I submit that the period of seconds of time
> during which this thing occurred, by every wit-
> ness's account, it was not instantaneous, a one-
> shot deal, if you will. It was not like pointing a
> gun, pulling the trigger—or havin' a gun even
> held at one side pointing at someone and then just
> accidentally or instantaneously pulling the trigger.
> Here we have, I submit the proofs show, *a con-
> scious pulling out of a knife, opening the blade up,
> there is passage of time there. There is testimony
> here, although it differs, there is testimony that
> their words were exchanged.* It was either "Come
> on" or something to that effect or, "You want
> some of this, too?" *Those words, and then again
> there is a passage of an appreciable period of time
> —which could be a second or two seconds or
> whatever—before the Defendant stuck it or
> stabbed the victim the first time.* And then if you
> add that with Barb Reed, ultimately the victim,
> apparently retreated, and then received at least a
> second wound and the third and et cetera, et
> cetera.

\* \* \*

But, first, I think the Court has got to decide, and that obviously would be independent of ultimately what I say or what Mr. McKaig says, whether or not there was time for pre-meditation presented by the facts, and whether or not there was time for the Defendant to take a second look. I submit that *the time for one to get a knife out, open it up, before stabbing someone, or ultimately lunging or however you want to characterize it, going across to stab him, there is time for a second look there,* and it's not just an instantaneous unreflected, not-deliberate act; that there was deliberation and there was time to reflect, and it was, indeed, pre-meditated. So we would request, first of all, a bind-over on First Degree, and if the Court differs in its opinion at least to what the facts are, then at the minimum, the bind-over should be on Second Degree, which is basically the same elements with the exception of the absence of the pre-mediation or deliberation. [Emphasis added.]

Absent a showing of clear abuse of discretion, this Court will not reverse a magistrate's finding of probable cause. *People v Doss, supra* at 101; *People v Dellabonda,* 265 Mich 486, 491; 251 NW 594 (1933); *People v Paille #2,* 383 Mich 621; 178 NW2d 465 (1970).

Weighing the evidence presented at preliminary examination in the instant case against the considerations outlined in *Vail, Berthiaume,* and *Oster,* we conclude that the magistrate clearly abused his discretion in binding defendant over on "open murder" on the basis of a finding of premeditation and deliberation. There was no evidence of planning or motive. The defendant and Tower did not even know each other.[11] The facts that a knife was

[11] Chief Justice WILLIAMS questions the credibility of Barbara Reed's testimony regarding the lack of any prior relationship between the defendant and the deceased. However, the magistrate stated at

used and that wounds were inflicted to the heart, a vital part of the body, do not raise an inference of premeditation. *Oster* at 497; *People v Hoffmeister,* 394 Mich 155, 159; 229 NW2d 305 (1975). Use of a lethal weapon alone is insufficient to find premeditation and deliberation. *People v Bargy,* 71 Mich App 609; 248 NW2d 636 (1976). There was no evidence that defendant "acquired or positioned" his knife with the thought beforehand to kill Tower. Shortly after the incident, defendant told one of his party companions that the victim had jumped him and he had to defend himself.

Evidence that the fighting between the defendant and the victim had ended, that the defendant was in control of the situation, *or that the victim was in retreat before defendant pulled out the knife* is supportive of a finding of premeditation and deliberation. See *People v Tilley,* 405 Mich 38; 273 NW2d 471 (1979). There was no such evidence presented here.

Finally, defendant's post-homicide conduct in leaving the scene and disposing of his shoe could be consistent with premeditation and deliberation. Leaving the scene of a crime and disposing of one's shoe, however, are just as consistent with an unpremeditated murder. Defendant's subsequent actions could have been the result of panic, especially in light of his steadfast contention that he was in fear of the victim's wielding knife. "Although these actions may be indicative of defendant's post-murder state of mind, they suggest little or nothing about his thoughts before or during the murder." *People v Williams,* 422 Mich 381, 405; 373 NW2d 567 (1985) (CAVANAGH, J.,

---

the preliminary examination that he found Reed's testimony to be credible. Indeed, the prosecutor presented no evidence of a prior relationship between the defendant and the deceased which would indicate motive.

dissenting, joined by LEVIN, J.); *Hoffmeister* at 161, n 7; *People v Morrin,* 31 Mich App 301, 332; 187 NW2d 434 (1971), lv den 385 Mich 775 (1971).

The prosecution's argument that premeditation could be inferred from the evidence that, while getting the knife out, opening it up, and ultimately lunging across to stab the victim, the defendant had made a conscious decision to murder the victim, is improbable. One cannot instantaneously premeditate a murder. *People v Jesse Smith,* 81 Mich App 190, 199; 265 NW2d 77 (1978); *People v Meier,* 47 Mich App 179, 191; 209 NW2d 311 (1973). A sufficient time lapse to provide an opportunity for a second look may be merely seconds, minutes, hours, or more, depending on the totality of the circumstances surrounding the killing. *Jesse Smith* at 199. In light of the other circumstances surrounding this killing, two seconds were not sufficient time for a "second look." It strains the imagination to conclude that two seconds would be sufficient for the defendant, who did not know the victim, to form the intent to kill, to deliberate on such intention, and to conduct the act itself. Additionally, there was no evidence of a plan to kill Tower.

The time span necessary to establish premeditation and deliberation must occur between the initial homicidal intent and the ultimate action. *People v Hoffmeister, supra.* It would be a perversion of terms to apply the term "deliberate" to any act which is done on a sudden impulse, for example when a homicide occurs during a sudden affray. *People v Tilley, supra* at 44-45; *Nye v People,* 35 Mich 16, 19 (1876). Virtually all of the evidence adduced at preliminary examination suggests the killing occurred as a response to circumstances which defendant was presented with upon his entry into the bathroom. There is no basis in this

record for an inference that defendant, in a cool state of mind, measured, evaluated and subjected his responses to a "second look" in between the stab wounds. *Hoffmeister,* at 159.

Notwithstanding the reasons and supporting case law cited above, the lead opinion asserts that the lapse of time between attacks, the use of a knife, and the *alleged* pursuit of the retreating victim, infers premeditation and deliberation. The lead opinion states that the magistrate recognized that pursuit of a fleeing victim can indicate premeditation and deliberation. Had the magistrate articulated that he found premeditation and deliberation upon the basis of such testimony, such an inference might well be proper. However, at bindover the magistrate stated:

> I do find that there was a murder committed by Mr. Johnson in his hand with a knife, and that because the weapon being used was that of—*the murder was committed with malice,* and the matter will be sent to Circuit Court for trial on the charge of Open Murder, based upon the testimony received at this Preliminary Examination. [Emphasis added.]

The magistrate's comments do not indicate that he found premeditation, but only that he found malice and was compelled to rely on *Strutenski* and its progeny when he held that the "Magistrate [is] not required to specify the degree of murder" on an open murder charge.

The harmless-error doctrine recognizes that the central purpose of a criminal trial is to promote "public respect for the criminal process by focusing on the underlying *fairness* of the trial rather than on the virtually inevitable presence of immaterial error." *Delaware v Van Arsdall,* 475 US 673,

—; 106 S Ct 1431, 1436-1437; 89 L Ed 2d 674, 685 (1986).

An appellate court attempting to apply harmless-error analysis under Michigan's current open murder rule is faced with a formidable burden. It must conclude that having a defendant defend on a charge of first-degree murder without the benefit of a showing of premeditation and deliberation at the preliminary examination was not prejudicial. The appellate court may also have to conclude *beyond a reasonable doubt* that the failure to show those same elements did not prejudice the defendant at trial. We think a court can make such a determination only in the rarest of circumstances, and a rule of reversal per se is therefore justified. See *Delaware v Van Arsdall, supra* (Marshall, J., dissenting).

Even if we use the standard proposed by the lead opinion—reasonable probability that the error affected the outcome of the trial—defendant's conviction should be reversed. A compromise verdict clearly indicates that the outcome of the trial was affected.

Moreover, when a higher charge, not warranted by the proofs, is submitted to the jury, "there is always prejudice because a defendant's chances of acquittal on any valid charge [are] substantially decreased by the possibility of a compromise verdict." *Vail* at 464. This Court long ago recognized the jury's tendency to compromise under such circumstances:

> [I]t is evident to most practitioners of experience that it would be much easier to secure an acquittal if the defendant were only charged with the lesser offense than it would be were he charged with all three offenses. The tendency of jurors is to compromise their differences. Where there is only one

charge they are obliged to meet the question
squarely by yes or no, or disagree, but where the
charges are three, the juror who thinks there
should be no conviction, and the juror who thinks
that a conviction should be had of the greater
offense are quite liable to agree upon a conviction
of the lesser offense. [*People v Gessinger,* 238 Mich
625, 628; 214 NW 184 (1927), cited with approval
in *Vail* at 463-464.]

See *People v Gill,* 43 Mich App 598; 204 NW2d 699
(1972); see also *People v Hansen,* 368 Mich 344;
118 NW2d 422 (1962); *People v Stahl,* 234 Mich
569; 208 NW 685 (1926).

We, therefore, conclude that the examining mag-
istrate abused his discretion in binding the defen-
dant over to the circuit court on open murder on
the basis of premeditation and deliberation and
that the defendant was harmfully prejudiced by a
compromised verdict. Accordingly, we would re-
verse.

### III

Lastly, defendant claims that the trial court
deprived him of the right to interpose the defense
of self-defense by disallowing conclusory testimony
as to his fear and apprehension at the time of the
alleged incident. On direct examination, the perti-
nent colloquy was as follows:

*Q.* Now, you just said trying to take the knife,
what did you mean by that?
*A.* What I mean, I grab his hand. The man is
going to stab me with the knife.
*Mr. Gabry:* Objection, Your Honor. It calls for a
conclusion.
*Mr. McKaig:* Your Honor, I believe that other
witnesses have been allowed to testify that they
thought Mr. Tower was trying to get away, and I

think this is absolutely a conclusion that is proper given the defense of self-defense.

*[The] Court:* But you're on direct exam. And under the rules of evidence he cannot testify as to a conclusion on direct examination.

*Mr. McKaig:* Your Honor, I would like the record to note I take exception to the court's ruling based on the notion that we feel the defendant ought to be allowed to testify as to what he was thinking and what his thoughts were at the time this was happening.

*[The] Court:* There's a rule of evidence that prohibits you from asking on direct examination of drawing conclusions. So stick with the rules of evidence, Mr. McKaig.

The objection is sustained.

With regard to the trial court's ruling, the Court of Appeals, in its unpublished opinion, said:

Had the trial court's ruling stood alone without any further testimony regarding defendant's state of mind or belief when he was allegedly attacked by the deceased in the bathroom, error would have occurred. MRE 701 allows opinion testimony of a lay witness if it is rationally based on the witness' perception and if helpful to determination of a fact in issue. Similarly, MRE 704 states that an opinion on an ultimate issue is not objectionable. The reasonableness of Defendant's belief that he was about to be stabbed and acted in self-defense was the key element in defendant's defense. Indeed, only defendant could describe what he felt and what he perceived was about to happen.

We agree with the Court of Appeals. An "opinion" is an inference or *conclusion* drawn by a witness from the facts. *Dudek v Popp,* 373 Mich 300; 129 NW2d 393 (1964). Opinion testimony regarding the fears of the defendant is admissible as a self-defense theory. *Brownell v People, supra; People v Lilly,* 38 Mich 270 (1878).

Since an opinion includes a conclusion pursuant to MRE 701, the trial court's ruling disallowing defendant's conclusory statement as to his fear and apprehension, was in error. However, such error was harmless in light of the additional testimony presented by defendant regarding his state of mind and belief when he was allegedly attacked in the bathroom by Tower. In reviewing the record, we found, in addition to the testimony already noted, further testimony presented by defendant concerning the circumstances as they were perceived by him, and supporting his claim of self-defense, including the following:

*A.* When he made advances towards me, which we were very close—it's a small bedroom—he made advances towards me.  ·

*Q.* Excuse me. Is this a bedroom or bathroom?

*A.* Bathroom.

*Q.* Can you tell the jury how he held the knife?

*A.* Yeah. It was in this position about shoulder height.

*Q.* Now, Henry, what happened then?

*A.* Well, when he made his advances I had to get ahold to him.

* * *

*Q.* And when you say you wrestled with him, if you can, describe what you're talking about?

*A.* I'm speaking of him trying to take the knife, trying to stab you with the knife. I got his hand. And he's scuffling to get loose, and I'm scuffling to hold him until I find room to run.

* * *

*A.* Well, when I got a chance, after we had wrestled around in there, falling against the walls and whatever, my arm didn't want to last with me any longer.

*Q.* What do you mean?

*A.* My injured arm. It had give out on me.

*Q.* What happened then?

*A.* Well, I shoved him toward the bath tub.

*Q.* OK.

*A.* I tried to shove him in the bath tub.

*Q.* What happened then?

*A.* Well, I succeeded. He went into the shower doors, and the shower doors went over in with him, making a loud crashing noise.

*Q.* What happened then?

*A.* I tried to run out of the bathroom.

*Q.* Did you get out of the bathroom?

*A.* No. The door was blocked.

\* \* \*

*Q.* (*Mr. McKaig*) Henry, I want to back you up again to the point where you first saw Mr. Tower with the knife in his hand.

*A.* OK.

*Q.* What did you think when you saw it?

*A.* The only thing I could think was I was fixing to get cut.

\* \* \*

*Q.* And you pushed him into the bath tub?

*A.* Yes.

*Q.* When he went in the bath tub, Henry, what happened?

*A.* I tried to get out.

\* \* \*

*Q.* Now, what did you do when you found you couldn't get out of the bathroom?

*A.* Well, I was scared. And I turned back and faced—I didn't want my back to Mr. Tower with that knife.

*Q.* Why not?

*A.* I didn't want to get stabbed or cut. I couldn't get out so I had to face him. Maybe there's a chance to grab ahold of him again.

\* \* \*

*Q.* Tell the jury if he still had the knife.

*A.* Yes, he had the knife.

*Q.* What happened then?

*A.* I couldn't get out. So I got ahold of him, again. And we went through the same process all over again, scuffling around in there and slamming against the walls and whatever. I tried to make him lose the knife, but I was unsuccessful at that.

\* \* \*

*Q.* Now, Henry, what was your state of mind at the time all this was going on?

*A.* I couldn't exactly explain the state of my mind to anybody because I was really shook up. I was nervous, nearly out of my mind. I was frightened, bad.

\* \* \*

*Q.* You were pretty frightened in the bathroom, were you not?

*A.* Yes.

*Q.* This person that you never knew for some reason pulled this, what's been referred to, pig sticker out?

*A.* Yes.

*Q.* You didn't even know the man, right?

*A.* I didn't.

*Q.* You have no motive that you can think of why he would want to just get you with that knife?

*A.* I don't know.

*Q.* So you struggled and you finally escaped, and it's your testimony on direct examination, is it not, that you realized you lost your shoe and you started to go back up?

*A.* Correct.

To prove self-defense, the defendant must present sufficient evidence to show that (1) the defendant honestly believed that he was in danger, (2) the degree of danger which must be feared is serious bodily harm or death, and (3) the action taken by the defendant must have appeared at the time to be immediately necessary. *People v Deason,* 148 Mich App 27; 384 NW2d 72 (1985). The

Court of Appeals had sufficient basis upon which to believe there was enough evidence put before the jury by defendant concerning his impressions, his ability to escape, and the degree to which he felt himself threatened to make a conclusion as to whether defendant acted in self-defense.

We, therefore, conclude that defendant's last claim of error is without merit.