*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON MICHAEL MCKEAN,

        Defendant-Appellant.

UNPUBLISHED
June 18, 2026
9:00 AM

No. 371443
Wayne Circuit Court
LC No. 19-001281-01-FC

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Brandon Michael McKean, (hereinafter "defendant"), appeals as of right his bench-trial convictions of first-degree criminal sexual conduct (CSC-I) (multiple variables), MCL 750.520b; and kidnapping, MCL 750.349.[1] Defendant was sentenced to 18 to 35 years' imprisonment for the conviction of CSC-I and 10 to 20 years' imprisonment for the conviction of kidnapping.[2] For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.[3]

## I. BACKGROUND

This case concerns events that occurred in 2007, when the then-13-year-old complainant exited a bus en route to her brother's residence. While the complainant was walking, defendant approached her and, at gunpoint, compelled her into the backseat of a vehicle. Defendant entered the vehicle after her, and an unidentified male driver, departed the scene.

---

[1] Defendant was originally charged with CSC-I, kidnapping, and third-degree criminal sexual conduct (CSC-III) (victim is at least 13 years old and under 16 years old), MCL 750.520d.

[2] The Wanye County Prosecutor did not file any materials in this matter.

[3] At the time of the drafting of this opinion, the People of Wayne County had not filed a responsive pleading in this matter.

-1-

Defendant compelled the complainant to disrobe and then engaged in penile-vaginal penetration. The assault continued until the driver stopped the vehicle behind Redford High School. The driver then moved to the backseat and coerced the complainant to perform oral sex; after the complainant vomited, the driver exited to clean himself. Defendant subsequently required the complainant to perform oral sex on him. Upon conclusion of the assault, the complainant was ordered to exit the vehicle, after which the assailants departed.

The complainant returned to her brother's residence, where she disclosed the assault to his girlfriend who notified law enforcement, and the complainant was transported to a hospital. There, Nurse Practitioner Mary White performed a sexual assault examination, collecting oral and genital samples which were preserved in a sexual assault kit and subsequently transferred to the Detroit Police Department in 2017, the State of Michigan outsourced sexual assault kit processing from the Detroit Police Department and Michigan State Police (MSP) to Sorenson Forensics, a private DNA laboratory. Forensic scientist Scott Strickler analyzed the complainant's sexual assault kit, generating a DNA profile from male DNA detected in the vaginal swabs. This profile was submitted to the Combined DNA Index System (CODIS) and yielded a match to defendant. Detective Patricia Penman of the Wayne County Sheriff's Office assumed responsibility for the investigation in 2018 and requested further analysis of the remaining samples from the complainant's sexual assault kit by the MSP. Penman conducted a photographic identification procedure in which the complainant identified defendant. Penman subsequently interviewed defendant on December 31, 2019, prior to arraignment. Defendant was advised of his rights pursuant to *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and expressly waived those rights before speaking with Penman.

Defendant was initially charged with first-degree criminal sexual conduct (CSC-I) and kidnapping. The complainant testified at the preliminary examination, recounting the details of the alleged sexual assault. Following the preliminary examination, the prosecution amended the information to add a charge of third-degree criminal sexual conduct (CSC-III), pursuant to MCL 750.520 (victim at least 13 years old but under 16).

Defendant requested and was administered a polygraph examination by Detective Michael McNamara of the Dearborn Police Department. Upon completion of discovery, defendant moved to suppress statements made during his December 31, 2019, police interview and polygraph examination, contending that such statements were not voluntarily given. The trial court conducted a hearing pursuant to *People v Walker*, 374 Mich 311; 132 NW2d 87 (1965). Both McNamara and Detective Penman testified regarding their respective interviews with defendant. On each occasion, they testified that defendant was advised of his *Miranda* rights, which he waived.

During the interview with Detective Penman, defendant stated, "[O]h, my God. Oh, my God. I do need an attorney. I do need an attorney." Penman immediately terminated the interview, advising defendant that questioning could not proceed absent counsel. Defendant subsequently requested that the interview continue, whereupon Penman re-administered Miranda warnings, which defendant again waived. The trial court found that defendant's waivers of his *Miranda* rights were voluntarily, knowingly, and intelligently made, and were not the product of police coercion, and accordingly denied defendant's suppression motion.

During pretrial proceedings, defendant expressed his intention to waive his right to a jury trial. The trial court placed defendant under oath and engaged in a colloquy to ascertain that defendant: (1) desired a bench trial; (2) understood that the court, rather than a jury, would serve as the trier of fact; (3) had not been promised any inducement for waiving the right to a jury trial; and (4) was acting voluntarily. The trial court accepted the waiver as valid.

Prior to the commencement of the bench trial, the prosecution moved to declare the complainant unavailable and to admit her preliminary examination testimony pursuant to MRE 804(a)(2). Although the complainant was subpoenaed, she failed to appear at trial. The defendant objected on the grounds that he was deprived of a meaningful opportunity to develop the complainant's testimony during the preliminary examination, as that proceeding was conducted by defendant's prior counsel, whom he alleged was not adequately prepared, particularly with respect to the kidnapping charge. The trial court ordered the complainant to appear and directed the prosecution to effectuate service. On the day of trial, the prosecution reported that the complainant had received the order but refused to comply. Concluding that the complainant was unavailable and that defendant previously had an opportunity for cross-examination, the trial court admitted her prior testimony.

The bench trial commenced and, following the close of proofs, defendant failed to appear for the final day of proceedings. The trial court issued a failure to appear and remand order and rendered findings of guilt as set forth herein.[4] After defendant was arraigned on the failure to appear and remand, the verdict was communicated to him and sentence imposed. Defendant now appeals as of right.

## II. ANALYSIS

### A. Motion to Suppress

In his appeal, defendant asserts that the trial court committed reversible error in denying his motion to suppress his custodial statements. Specifically, defendant contends that law enforcement officers infringed upon his constitutional rights by persisting in their interrogation after invocation of his rights, thereby rendering his subsequent statements inadmissible under prevailing legal standards. Consequently, defendant argues, the trial court's failure to suppress his statements constituted legal error warranting reversal.

"This Court reviews for clear error a trial court's factual findings in a ruling on a motion to suppress evidence." *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). "A trial court's factual findings are clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake." *Id.* "The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion." *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People*

---

[4] The trial court merged defendant's CSC-I and CSC-III charges at the end of the bench trial.

*v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). " 'To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo.' " *Clark*, 330 Mich App at 415, quoting *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014).

The United States and Michigan Constitutions guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. "To effectuate this right, the police must warn a defendant of his or her constitutional rights if the defendant is taken into custody for interrogation." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018).

> To protect a defendant's Fifth Amendment privilege against self-incrimination, custodial interrogation must be preceded by advice to the accused that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." [*People v Cortez*, 299 Mich App 679, 691; 832 NW2d 1 (2013), quoting *Miranda*, 384 US at 444.]

"Statements made by a defendant to the police during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *Barritt*, 325 Mich App at 561-562.

The validity of a *Miranda* waiver is a bifurcated analysis that considers: " '(1) whether the waiver was voluntary, and (2) whether the waiver was knowing and intelligent.' " *People v Eliason*, 300 Mich App 293, 304; 833 NW2d 357 (2013), remanded on other grounds 496 Mich 440 (2014), quoting *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). "Whether a waiver is knowing and intelligent 'requires an inquiry into [a] defendant's level of understanding, irrespective of police conduct.' " *Eliason*, 300 Mich App at 304, quoting *People v Gipson*, 287 Mich App 261, 265; 787 NW2d 126 (2010). "A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. at 264-265. "A defendant does not need to understand the consequences and ramifications of waiving his or her rights. A very basic understanding of those rights is all that is necessary." *Id*. at 265.

"Under *Miranda*, in the context of custodial interrogation, the right to the presence of counsel was recognized as 'indispensable to the protection of the Fifth Amendment privilege. . . .' " *People v Mathews*, 324 Mich App 416, 429-430; 922 NW2 371 (2018), quoting *Miranda*, 384 US at 469. "Notably, this 'need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires.' " *Mathews*, 324 Mich App at 430, quoting *Miranda*, 384 US at 470.

Here, defendant contests the admissibility of statements made during his polygraph examination and his December 31, 2019 police interview. Regarding the polygraph, defendant asserts that the absence of defense counsel during the examination constituted error despite his concession that he was advised of his *Miranda* rights and executed a waiver. It is important to note that defendant does not dispute the validity of that waiver. Instead, his argument is predicated on the lack of counsel's presence during the polygraph, contending this absence necessitated suppression of the statements. It is well established that "[o]nce a suspect invokes his right to

remain silent or requests counsel, police questioning must cease unless the suspect affirmatively reinitiates contact." *Tanner*, 496 Mich at 208. Additionally, "a more formal inquiry is required before allowing a defendant to waive his right to counsel at trial than is required during postindictment questioning." *People v McElhaney*, 215 Mich App 269, 275; 545 NW2d 18 (1996).

In the present matter, it is undisputed that defendant initiated contact with law enforcement by specifically requesting the polygraph examination. Prior to the administration of the polygraph, defendant was apprised of his *Miranda* rights and executed a written waiver. Testimony from McNamara established that defendant appeared to comprehend his rights and did not exhibit signs of intoxication, impairment, or medical distress. On appeal, defendant does not dispute these assertions.

The governing inquiry in such circumstances is "whether the defendant reinitiated a conversation on the subject matter of the investigation and whether, under the totality of the circumstances, the defendant knowingly and intelligently waived his rights to counsel and to remain silent." *Clark*, 330 Mich App at 418. The record supports the conclusion that defendant knowingly and intelligently waived his right to counsel following the *Miranda* advisement and execution of the waiver prior to the polygraph examination. Moreover, defendant's request for the polygraph further evidences that he reinitiated contact with law enforcement.

Defendant further contests the admissibility of statements made during his December 31, 2019 interview with Detectives Penman and Farrah, asserting that he invoked his right to counsel yet questioning by Penman persisted. However, this contention omits critical aspects of the interview's factual context. "When a defendant unequivocally invokes his right to counsel, police are required to cease interrogation immediately and may not resume questioning until counsel is present." *Tierney*, 266 Mich App at 710-711. However, the invocation must be unequivocal. *Id*. at 711. Notably, if a suspect who has asserted the right to remain silent subsequently initiates further communication with law enforcement, renewed interrogation is permissible even absent counsel. *Clark*, 330 Mich App at 416, quoting Edward*s v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981). Furthermore, a defendant may effectuate a valid waiver of a previously invoked right to counsel without the presence of an attorney. *People v Harris*, 261 Mich App 44, 54; 680 NW2d 17 (2004).

Here, defendant was advised of his *Miranda* rights prior to the commencement of the interview and affirmatively indicated his understanding of those rights, including his right to counsel, and he continued to express a willingness to speak with Detective Penman. Defendant does not contest the validity of this initial waiver. He asserts, however, that he invoked his right to counsel by stating: "[O]h, my God. Oh, my God. I do need an attorney. I do need an attorney." Although the trial court observed that this statement may not constitute an unequivocal invocation of the right to counsel, an observation we do not share, Detective Penman treated it as such and immediately ceased the interrogation, informing defendant that further discussion was precluded by his request for counsel. Defendant, however, requested that Penman continue the interview. At that point, Penman reiterated the *Miranda* warnings, and defendant re-executed the waiver form. While defendant now contends that Penman was obligated to cease questioning permanently upon invocation of the right to counsel, the record reflects that questioning ceased immediately,

and only resumed at defendant's express request, following a renewed and valid waiver. Such conduct by police officers is permissible. *Id*.

The record makes clear that in both instances, defendant initiated contact with law enforcement and was properly advised of and waived his rights under *Miranda*. Neither McNamara nor Penman observed any indicia of impairment or distress that would have affected defendant's capacity to waive his rights, and defendant does not argue any diminished capacity. The evidentiary record amply supports the trial court's determination that defendant knowingly and voluntarily waived his rights in both interviews. Accordingly, the trial court did not err in denying defendant's motion to suppress. See *Clark*, 330 Mich App at 415 ("This Court reviews for clear error a trial court's factual findings in a ruling on a motion to suppress evidence.").

## B. Jury-Trial Waiver

In his appeal, defendant contends that his purported waiver of his right to a jury trial was invalid, as the record fails to demonstrate that the waiver was made voluntarily, knowingly, and intelligently. Defendant argues that after he indicated that he wished to waive his right to a jury trial, while the trial court engaged with him in some inquiry, its questions were constitutionally deficient. Specifically, defendant contends, the trial court failed to: (1) advise defendant of the essential attributes of a jury trial; (2) ascertain defendant's educational background or capacity to comprehend the proceedings; and (3) ensure that the waiver was the product of a voluntary and informed choice. Thus, defendant claims, the trial court's cursory colloquy did not establish that he understood the nature and consequences of waiving the right to a jury trial. As a result, defendant asks this court for a finding that his waiver was invalid, constituting structural error and necessitating reversal and remand for a new trial.

When preserved, "[t]he adequacy of a jury trial waiver is a mixed question of fact and law." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009). To preserve a claim of ineffective waiver of a jury trial, defendant must raise the issue in the trial court. *People v Lafey*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 361936); slip op at 5. While defendant waived his right to a jury trial, he never raised the issue his waiver was involuntary in the trial court. As such, this issue is unpreserved. *Id*. at ___; slip op at 5.

"[B]ecause defendant failed to preserve this constitutional issue for appeal, we review it for plain error affecting substantial rights." *Id*. at ___; slip op at 5. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). To the extent it is relevant, this Court reviews the interpretation of a statute or court rule de novo. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2004).

"A criminal defendant has a constitutionally guaranteed right to a jury determination that he is guilty beyond a reasonable doubt." *Cook*, 285 Mich App at 422. "However, with the consent

of the prosecutor and the approval of the trial court, a defendant may waive his right to a jury trial." *Id*., see also MCL 763.3 ("In all criminal cases arising in the courts of this state the defendant may, with the consent of the prosecutor and approval by the court, waive a determination of the facts by a jury and elect to be tried before the court without a jury."). "In order for a jury trial waiver to be valid, however, it must be both knowingly and voluntarily made." *Cook*, 285 Mich App at 422.

Defendant argues the record fails to establish his waiver was voluntarily, intelligently, and understandingly made, because the trial court failed to explain "the nature of the right" to him. MCR 6.402 establishes a defendant's ability to waive his or her right to a jury trial and states, in relevant part:

(B) Waiver and Record Requirements. Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding.

"By complying with the requirements of MCR 6.402(B), a trial court ensures that a defendant's waiver is knowing and voluntary." *Cook*, 285 Mich App at 422-423. "Complying with the requirements of MCR 6.402(B) 'creates a presumption that a defendant's waiver was voluntary, knowing, and intelligent.' " *Lafey*, ___ Mich App at ___; slip op at 6, quoting *People v Mosly*, 259 Mich App 90, 96; 672 NW2d 897 (2003). " '[T]he dispositive inquiry is whether the defendant understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.' " *Id*. at ___; slip op at 6, quoting *Jells v Mitchell*, 538 F3d 478, 510 (CA 6, 2008).

Defendant advised the trial court of his intention to waive his right to a jury trial. The court then engaged in a colloquy with defendant regarding the waiver:

*The Court*: Now you know, [defendant] you are entitled to have your case tried by a jury and in a jury trial, all 12 jurors have to agree on whatever verdict they bring in. On the other hand, you could waive your right to trial by jury and have a waiver trial so long as the People agree and I gather the People do consent to a waive . . . is that correct?

*Mr. Andrieux*: That's correct, Judge.

*The Court*: All right. I want to make sure that you understand that in a waiver trial there's no jury involved at all, I'm the only one making the decision about whether you are guilty or not guilty and it will be me and not Judge Stevens or Judge Ramsey; do you understand that?

*The Defendant*: Yes, Your Honor.

*The Court*: You are okay with that?

*The Defendant*: Yes, Your Honor.

*The Court*: Has anybody suggested to you that I give you [sic] a break if you waive your right to a trial by jury?

*The Defendant*: No, Your Honor.

*The Court*: Has anybody twisted your arm in any way to get you to do that?

*The Defendant*: No, Your Honor.

*The Court*: You are doing this freely and voluntarily?

*The Defendant*: Yes, Your Honor.

In order to prevail on this issue, defendant must first establish an error occurred. *Carines*, 460 Mich at 763. We discern no reversible error from this record.

Defendant contends that this colloquy was inadequate to effectuate a valid waiver of his right to a jury trial. Specifically, defendant asserts: (1) he was not apprised of his right to participate in the selection of jurors; (2) the trial court did not expressly inform him that it, rather than a jury, would adjudicate his guilt in a bench trial; (3) the court failed to ascertain defendant's level of education and understanding; and (4) the court did not make a sufficient determination as to whether defendant's waiver was knowing, intelligent, and voluntary.

Contrary to defendant's assertions, the record reflects that the trial court engaged in a direct colloquy with defendant, inquiring whether he was voluntarily relinquishing his right to a jury trial, to which defendant responded affirmatively. The trial court proceeded to delineate the distinction between a jury trial and a bench trial, explicitly stating that the court, rather than a panel of twelve jurors, would determine defendant's guilt. The trial court further ascertained that defendant comprehended this distinction and was comfortable proceeding with the waiver. Although the trial court did not address the process of jury selection, it was under no obligation to do so. *Lafey*, ___ Mich App at ___; slip op at 6 ("The dispositive inquiry is whether a defendant understands that, by waiving the right to a jury trial, the trial court will determine guilt rather than a jury.") From this record we conclude that the trial court complied with MCR 6.402(B) by elucidating the distinctions between a jury trial and a bench trial, and by expressly confirming defendant's understanding and voluntary decision to proceed without a jury. As such, a presumption of validity attaches to defendant's waiver. *Id*. However, defendant contends that the burden should not shift to him to demonstrate a lack of understanding, citing his limited exposure to the criminal justice system and absence of prior jury trial experience. However, this argument disregards defendant's unequivocal responses during the trial court's inquiry. Defendant characterizes the colloquy as abbreviated yet overlooks the court's direct and specific questions regarding his comprehension of the right at issue and the voluntariness of his waiver. His assertion that the court failed to inquire as to voluntariness is belied by the record.

The trial court adhered to the procedural requirements set forth in MCR 6.402(B) when it examined defendant regarding the waiver of his right to a jury trial. Defendant has failed to

identify any deficiency in the trial court's inquiry. Accordingly, the trial court did not err in accepting defendant's waiver following a thorough discussion on the record, and defendant cannot demonstrate reversible error. *Carines*, 460 Mich at 750, 763.

## C. Admission of Complainant's Prior Testimony

Next, defendant argues that the trial court committed reversible error by determining that the complainant was unavailable and admitting her preliminary examination testimony. Defendant asserts that the admission of this testimony was improper both under MRE 804 and pursuant to the Confrontation Clause of the United States Constitution, U.S. Const., Am. VI; Const. 1963, art. 1, § 20.

"The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *Thorpe*, 504 Mich at 252. An abuse of discretion "occurs when the court 'chooses an outcome that falls outside the range of principled outcomes.' " *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014), quoting *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Douglas*, 496 Mich at 565-566.

For the first time on appeal, defendant argues the trial court's admission of the complainant's preliminary examination violated his right under the Confrontation Clause of the United States and Michigan Constitutions. Const, Am VI; Const 1963, art 1, § 20. To preserve a challenge under the Confrontation Clause, defendant must raise it in the trial court. *People v Moorer*, 262 Mich App 64, 67-68; 683 NW2d 736 (2004). While defendant objected to the admission to the complainant's preliminary examination, he did not challenge the admission under the Confrontation Clause. As such, this issue is unpreserved. *Id*.

When preserved, "[w]hether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). Because defendant failed to preserve his Confrontation Clause challenge, the claim "is therefore subject to review for plain error." *Moorer*, 262 Mich App at 68. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*.

Defendant contends that the trial court committed reversible error by admitting the challenged evidence, asserting that the complainant was available to testify and that defense counsel was deprived of a meaningful opportunity to develop the complainant's testimony during the preliminary examination. Under MRE 801(c), hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is not admissible except as provided by these

rules." MRE 802. MRE 804 contains exceptions to the rule against hearsay when the declarant is unavailable as a witness and states, in relevant part:

> (a) Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant:
>
> * * *
>
> (2) refuses to testify about the subject matter despite a court order to do so;
>
> * * *
>
> But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.
>
> (b) The Exceptions. The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> (1) Former Testimony. Testimony that:
>
> > (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
> >
> > (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

"Consequently, if a witness is determined to be unavailable, certain evidence that would otherwise be inadmissible may be admitted at trial so long as it meets the requirements of MRE 804(b) and is not otherwise excluded by another rule of evidence." *People v Duncan*, 494 Mich 713, 724; 835 NW2d 399 (2013).

Regarding the issue of availability, the prosecution represented that the complainant had expressly communicated her refusal to testify. In response, the trial court issued an order compelling the complainant's appearance and directed the prosecution to serve the order. The complainant subsequently contacted the prosecution, acknowledged receipt of the court's order, yet reaffirmed her refusal to appear and testify. A witness is deemed unavailable pursuant to MRE 804(a)(2) when the witness: "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so. . . ." Here, the complainant conceded receipt of the trial court's order to appear but nonetheless persisted in her refusal to testify. Under these circumstances, the trial court properly concluded that the complainant was unavailable. MRE 804(a)(2).

Defendant further asserts that he lacked an adequate opportunity to fully develop the complainant's testimony during the preliminary examination. In *People v Farquharson*, 274 Mich App 268, 272; 731 NW2d 797 (2007), this Court, quoting MRE 804(b)(1), held that the initial element for the admissibility of former testimony is that such testimony must have been elicited at

another hearing. The subsequent inquiry is "whether the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony." *Id*. at 275. The *Farquharson* Court identified a nonexhaustive set of factors for trial courts to consider in assessing whether a party possessed a similar motive to examine a witness:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id*. (quotation marks omitted).]

Here, defendant does not dispute that the complainant testified at the preliminary examination. Regarding opportunity, defendant contends that the trial court failed to articulate the *Farquharson* factors on the record. While defendant accurately argues that the trial court did not explicitly discuss each factor, the record reflects that the court addressed the overarching issue of opportunity.

Defendant contests the first and second *Farquharson* factors. As to the first, defendant asserts he lacked a substantially similar opportunity to disprove the pertinent issues at the preliminary examination because his original counsel was newly appointed and had not yet received discovery. However, defendant does not identify any specific portions of the complainant's preliminary examination testimony that would have been subject to more robust cross-examination had discovery been available. The trial court also recognized this point, observing that defendant failed to demonstrate the existence of any newly discovered evidence since the preliminary examination that would have affected his opportunity to cross-examine the complainant.

Defendant further contends that the issues litigated at trial were not substantially similar to those addressed at the preliminary examination. The primary function of a preliminary examination is to determine whether a crime has been committed and whether probable cause exists to believe the defendant committed it. *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986). Here, the prosecution elicited the complainant's testimony at the preliminary examination to establish probable cause for the charges of CSC-I and kidnapping. Defendant cites *People v Vera*, 153 Mich App 411, 416; 395 NW2d 339 (1986), for the proposition that preliminary examination testimony does not fit within the former testimony exception in MRE 804(b)(1). This characterization misreads our Court's prior holding.

In *Vera*, this Court considered whether the trial court properly excluded portions of a witness's preliminary examination testimony from admission at trial. *Vera*, 153 Mich App at 413. The witness testified at the preliminary examination but died before trial; the prosecution moved to admit her testimony under MRE 804(b)(1). The dispute centered on the admissibility of the portion of the testimony addressing the defendant's bond, during which the witness opined that she did not believe the defendant intended to kill the complainants. *Id*. at 413-414. The prosecution objected, and the trial court excluded that portion, finding that the prosecution lacked a motive to develop the testimony on cross-examination comparable to the issues of guilt. *Id*. at 414-415. This Court affirmed, holding that the excluded testimony pertained to bond rather than to the elements

of the charged crime, and thus the prosecution did not have a similar motive to cross-examine. *Id.* at 416. Thus, defendant's assertion that *Vera* categorically excludes preliminary examination testimony from the former testimony exception under MRE 804 is erroneous. Rather, *Vera* held that testimony regarding bond—unrelated to the underlying criminal charges—was inadmissible for lack of a similar motive to cross-examine. Crucially, this Court did not disturb the trial court's admission of uncontested portions of the preliminary examination testimony. *Vera*, 153 Mich App at 416.

Here, the complainant's preliminary examination testimony addressed the charged offenses of sexual assault and kidnapping, and defendant had the opportunity and motive to subject her testimony to cross-examination. Defendant thus possessed an "interest of substantially similar intensity in proving or disproving the testimony" of the complainant. *People v Garay*, 320 Mich App 29, 38; 903 NW2d 883 (2017), vacated in part on other grounds, 506 Mich 936 (2020).

With respect to the second *Farquharson* factor, defendant maintains he lacked a similar motive to develop the complainant's testimony, characterizing the preliminary examination as a discovery tool with a lower burden of proof than at trial. However, as established, the primary purpose of the preliminary examination is to determine whether a crime occurred. *Johnson*, 427 Mich at 104. While defendant may have perceived the preliminary examination as an opportunity for discovery, such a subjective perspective is immaterial to the fundamental purpose of that proceeding. The reduced burden of proof inherent in a preliminary examination in no way attenuates defendant's incentive to challenge or rebut the complainant's narrative. *Garay*, 320 Mich App at 38 ("[D]efendant had a similar motive to cross-examine N and T at both proceedings—defendant was motivated to show that their testimony regarding what they saw and heard from their porch lacked credibility or was not accurate."). That defendant might have pursued a different strategy does not negate the existence of a similar opportunity and motive to challenge the complainant's claims at the preliminary examination.

Defendant does not address the third *Farquharson* factor but does not dispute that he cross-examined the complainant at the preliminary examination. The trial court acknowledged this fact. As previously stated, while the trial court did not expressly analyze each *Farquharson* factor on the record, its decision to admit the complainant's preliminary examination testimony fell within the range of principled outcomes, given its findings that the witness was unavailable and that defendant had an adequate opportunity to develop the testimony. *Musser*, 494 Mich at 348.

D. Confrontation Clause

Defendant asserts that the trial court's admission of the complainant's preliminary examination testimony constituted a violation of his constitutional rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. In order to prevail on this unpreserved claim, defendant bears the initial burden of demonstrating that the trial court's action amounted to a plain error. *Carines*, 460 Mich at 763. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when plain error resulted in the conviction of an

actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Callon*, 256 Mich App at 329.

"Even when evidence of an unavailable witness is admissible under the Michigan Rules of Evidence, it is still necessary to determine whether use of the testimony would violate a defendant's constitutional right to confront prosecution witnesses." *People v Meredith*, 459 Mich 62, 67; 586 NW2d 538 (1998). The United States and Michigan Constitutions establish and protect a defendant's right to confront witnesses. US Const, Am VI; Const 1963, art 1, § 20. "The right is implicated only for 'testimonial' evidence, because the Confrontation Clause applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *Bruner*, 501 Mich at 227, quoting *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). There is no dispute the complainant's prior testimony was testimonial evidence.

"Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 US at 68. "[I]t applies at a minimum to *prior testimony at a preliminary hearing*, before a grand jury, or at a former trial; and to police interrogations." *Id*. (emphasis added). "Former testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009).

As with the prior issue, defendant contends that he was deprived of an opportunity to cross-examine the complainant during the preliminary examination and asserts that the complainant was, in fact, available to testify. MRE 804(a) delineates the circumstances under which a witness is deemed unavailable, specifically providing in MRE 804(a)(2) that a witness who refuses to testify despite a court order is considered unavailable. Defendant posits that the trial court erred by conflating unavailability under the Confrontation Clause with the definition of unavailability in the Michigan Rules of Evidence. He further asserts that the prosecution failed to make a good-faith effort to secure the complainant's presence at trial, and thus the complainant was not truly unavailable for Confrontation Clause purposes. Notably, defendant fails to cite any legal authority in support of this argument. This Court has consistently held that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

In *Garland*, this Court expressly relied on MRE 804(a) to determine witness availability for purposes of a Confrontation Clause challenge where preliminary examination testimony was introduced at trial. *Garland*, 286 Mich App at 7. Accordingly, the complainant's refusal to testify in contravention of a court order rendered her unavailable within the meaning of MRE 804(a)(2). The prosecution undertook repeated efforts to secure the complainant's attendance, including issuing subpoenas and serving the trial court's order to appear. Despite these efforts, the complainant declined to appear, citing the trauma associated with recounting the events at issue.

Defendant further asserts that he was denied an adequate opportunity to cross-examine the complainant, referencing both the absence of the complainant's demeanor in her prior recorded testimony and the purportedly incomplete nature of his cross-examination. However, defendant does not identify any specific respects in which his cross-examination was deficient. As we have

previously held, in this case the complainant provided detailed testimony at the preliminary examination regarding the alleged kidnapping and sexual assault and defendant was afforded a meaningful opportunity to challenge her account at that time. *Johnson*, 427 Mich at 104 ("The preliminary examination's primary function is to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it."). While the United States Supreme Court in *Crawford* did not articulate a precise standard for what constitutes an opportunity to cross-examine, our Court in *Garland* held that the Confrontation Clause is satisfied where a witness is *subjected* to cross-examination. *Garland*, 286 Mich App at 7. Here, there is no dispute that defendant did, in fact, cross-examine the complainant.

Assuming, arguendo, that mere exposure to cross-examination does not suffice to satisfy the Confrontation Clause, it remains incumbent upon defendant to identify the precise constitutional infirmity in the opportunity afforded for cross-examination. On this record, defendant fails to meet this burden. While he asserts that trial counsel was deprived of an adequate opportunity to cross-examine, he cites no portion of the record indicating that counsel was either uninformed of or precluded from probing any relevant issue. The matters contested at trial were coextensive with those addressed at the preliminary examination. The trial court correctly noted that no evidence material to the contested issues had arisen subsequent to the preliminary examination, and defendant has not proffered any evidence sufficient to demonstrate a violation of the Confrontation Clause.

Accordingly, because the witness was unavailable within the meaning of MRE 804(a)(2), and defendant was afforded a prior opportunity for cross-examination, the requirements of the Confrontation Clause were satisfied. *Garland*, 286 Mich App at 7. Defendant has failed to establish any error on this issue. *Carines*, 460 Mich at 763.

Affirmed.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock